## C. AFONG *et al. vs.* CHUN TUNG AFONG *et al.*

### APPEAL FROM DECISION OF THE CHANCELLOR.

### JULY TERM, 1884.

### JUDD, C. J.; MCCULLY AND AUSTIN, JJ.

A trust deed made by plaintiff for benefit of his wife and children, and containing no power of revocation : Held, under the circumstances, not to be revocable by plaintiff on the ground of mistake; the mistake, if any, being of law.

Decision of the Chancellor affirmed.

### OPINION OF THE FULL COURT, BY AUSTIN, J.

THIS cause comes here on appeal from the decision of the Chancellor, allowing the defendants' demurrer to the plaintiffs' bill. The action was brought to set aside a voluntary trust executed by C. Afong in favor of himself, his wife and children, on the ground of mistake. The trustee is party plaintiff, and brings the deed of trust into Court. It contains no power of revocation.

The case was ably and exhaustively argued before the Chancellor, and the briefs of both parties there were embodied in his opinion. The same arguments were filed with us, and additional authorities, mainly like those filed, were also presented.

The question turns almost entirely upon the absence in the deed of a power of revocation.

The authorities are conflicting as to the effect of this. But we think the law may well be treated as settled, as quoted by the Chancellor from Bispham's Equity, p. 67:

"Where the intent to make an irrevocable gift is perfectly apparent, or where, even in the absence of such a clear intent, a sufficient motive (such as protection against the grantor's own extravagance, or the like) for making such a gift exists, the settlement cannot be disturbed. But when the deliberate intent does not appear and no motive exists, the absence of a power of revocation is *prima facie* evidence of mistake."

On looking at the trust deed, bearing date June 10, 1881, we find it recites that, " Whereas, the said C. Afong is desirous of

making the provision hereinafter made for his said wife and the issue of them, the said C. Afong and Julia Afong, and in consideration of his love and affection for them, this indenture witnesseth," and thereupon the deed declares the trust attacked herein.

This is the sole motive and consideration set forth in the deed, and if this were all, we should feel that the decision might be different. The motive for such an irrevocable gift might be thought inadequate. But the bill alleges, and plaintiffs' counsel says, that the deed was executed to protect the beneficiaries in it from the supposed claim of Lee Hong, the wife whom the plaintiff had married according to Chinese custom many years before in China. He feared that she might, if she came here, be declared by our Courts to be his lawful wife, and at his decease to be entitled to dower in all his estate. Here, then, was the real motive, and the reason for making the deed irrevocable seems sufficient. It was a present danger which threatened, and seemed likely to jeopardize the interests of his wife and children. To guard against this the deed should be irrevocable.

In *Jones vs. Clifton*, 101 U. S., 225, it is held that the power of revocation, though it exist, cannot inure to the benefit of future creditors, and it is held that such a power in that case would not go to the donor's assignees in bankruptcy, the creditors all being subsequent. That power, however, doubtless would inure to the benefit of creditors existing when the deed was made, and a voluntary settlement without value could be set aside in their favor.

Now, the claim of the Chinese wife, if it was valid at all, was a present claim to support, and an inchoate claim to dower, and she stood against Afong's estate as though a creditor. And when she finally came, as alleged in the bill, her claim was settled for by the granting of a valuable immediate annuity.

To defeat or embarrass this claim, and to protect against it as far as possible the future interests of his wife and children, were the objects in view, and the motive for the strongest deed possible was apparent. Whether any deed would be effective against the danger was not the question then most to be thought of. The consideration of natural love and affection for his wife and

their children, even though held not legal or legitimate, was ample. See *Bunn vs. Winthrop*, 1 Johns. Ch., 329.

The plaintiff states in his bill that when the trust was made, he believed that he still retained the power of otherwise disposing of the trust property. He may have had such a thought, but the paramount purpose then in his mind was defense against the Chinese marriage. If, as to the other point, he mistook the law, it was not one of those special mistakes of law, partaking of the nature of fact, which form the few exceptions to the rule, *ignorantia legis neminem excusat.*

For these reasons, and for those expressed in the opinion below, the decree must be affirmed.

*A. S. Hartwell,* for plaintiffs.

*W. R. Austin,* for minor respondents.

*J. M. Davidson,* for the other respondents.

Honolulu, September 12, 1884.

DECISION OF THE CHANCELLOR, APPEALED FROM.

In June, 1881, C. Afong executed to W. W. Hall, trustee, a deed of his premises in Nuuanu Valley, being his principal residence. The consideration is stated to be his love and affection for his wife Julia and their issue. The trust is declared to be to the use of the said C. Afong and his assigns during his lifetime, and after his decease to the use of Julia, his wife, and her assigns during her life, and upon her decease over in fee to the Hawaiian-born children of the said C. Afong by the said Julia Afong, in equal shares to the said children who shall then be living, and the lawful issue of any such who shall have deceased, by right of representation.

The deed provides for the appointment of successors to the trustee, but contains no power of revocation or to charge the estate with debts. The settlement was entirely voluntary, but it is stated in the bill to have been made in order to avert an impending danger from a so-called Chinese wife, who was about to come to Honolulu to assert a claim to Mr. Afong's estate, and that it was executed by Mr. Afong solely to protect the beneficiaries therein named, and under the belief that he would not thereby

preclude himself from otherwise disposing of the property by
will, or from charging it with debts in case it was necessary for
the maintenance of the beneficiaries or otherwise, and that the
omission to insert such power in the conveyance was owing solely
to such belief of Mr. C. Afong.   The bill further alleges that the
Chinese woman came to Honolulu, but in consideration of a large
annuity settled upon her, she executed a release of all her claims,
present or prospective, to the estate of the said C. Afong; that it
is now important for the said C. Afong to reside mainly upon his
plantation on Hawaii, and to sell the said residence in Honolulu,
and that, in order to do this, the said voluntary conveyance must
be cancelled and revoked.   The bill gives the names and ages of
the children of the said C. Afong and Julia his wife, and asks for
the appointment of a *guardian ad litem* for the minor children.

The trustee brings the deed into Court, and submits to the
order of the Court.

(Briefs of counsel are omitted.)

### BY THE COURT.

I think that the rule, concerning the power of the settlor to
have his conveyance cancelled, is well laid down in the Massa-
chusetts cases cited by the respondents' attorney, W. R. Austin,
Esq.

" A voluntary settlement completely executed, without any
circumstances tending to show mental incapacity, mistake, fraud
or undue influence, is binding, and will be enforced against the
settlor and his representatives, and cannot be revoked, except so
far as a power of revocation has been reserved in the deed of
settlement." *Viney vs. Abbott*, 109 Mass., 300. In *Sewell vs.
Roberts*, 115 Mass., 22, the Court say: " The first question arising
in this suit is whether such voluntary settlement was revocable
by the settler during his life or by his will," and decides that the
rule is well settled that where the conveyance is fully executed
and the trust perfectly created, the settlement cannot be revoked
or altered by a second settlement of the same property, in the
absence of any provisions giving the settler power to do so.

Applying these principles to the case at bar, I find that the
conveyance is completed and executed and the trust is fully
created.   The legal title to the property is vested in the trustee,

and the settlor, Afong, has parted with all his power and dominion over it, and the declaration of the trust contains no power of revoking the trust.

The bill sets up no circumstances showing mental incapacity on the part of the settlor, nor is there any fraud alleged to have existed, or undue influence to have been used. But a mistake of the legal effect of the instrument of settlement is set up, to wit: That the settlor supposed he could revoke it by will, and charge the estate with debts.

A court of equity will not ordinarily relieve a party of the consequences of a mistake of law.

See Bispham's Eq., Sec. 187.

I have no doubt that in the courts of Massachusetts this deed could not be annulled.

Many English cases are cited in the briefs of counsel, which carry the authority of equity to vacate a voluntary settlement much further than in the Massachusetts courts.

The result at which I have arrived, after an examination of these cases, is that the settlement before me should not be disturbed.

Bispham on Equity, Sec. 67, says: "It sometimes happens that the voluntary settlor himself seeks the aid of a court of equity to have the settlement revoked, and the question has then arisen whether in such instrument powers of revocation ought not to be inserted, and how far a voluntary irrevocable settlement, in the absence of any motive for an irrevocable gift, can be sustained. There has been some fluctuation of authority upon this point, but the true rule seems to be that the absence of a power of revocation is nothing more than a circumstance to be taken into account, and of more or less weight according to the circumstances of the case. Where the intent to make an irrevocable gift is perfectly apparent, or where, even in the absence of such a clear intent, a sufficient motive (such as protection against the grantor's own extravagance, or the like) for making such a gift exists, the settlement cannot be disturbed. But when the deliberate intent does not appear, and no motive exists, the absence of a power of revocation is *prima facie* evidence of mistake."

As we have seen, the deed contained no power of revocation,

but the grantor was a man of ripe years, with a large family born in this Kingdom, and an undefined danger from the claims of a previous so-called Chinese marriage was threatening him. It is difficult to see how the claim could be made good so long as Mr. Afong lived, and yet the settlement was made *prima facie* to secure the Hawaiian-born children against the claim which the Chinese wife might make to the property of Mr. Afong upon his decease. A sufficient motive here appears for making the settlement irrevocable. He wished the property to be placed beyond his power, lest the persuasions or threats of the Chinese woman should induce him to change his purpose.

I see nothing improvident or unreasonable in the terms of the settlement. The fact that an arrangement was arrived at, since the execution of the deed, between the Chinese woman and Mr. Afong, by which the danger was averted, so far from being a reason for now allowing the grantor to take back his gift to his children, is a reason for not allowing it, for their patrimony was diminished by the settlement on the Chinese woman.

The settlement was a natural one ; it was for the benefit of the settlor's own children, his statutory heirs at law. None of the peculiar circumstances exist in this case upon which, in the English cases, Courts have afforded relief, and I think the demurrer must be sustained.