BISHOP v. TINSLEY.

LIMITATION OF ESTATES.—DEED conveying lands to A. "during the term of her natural life, and from and after her decease * * * to her husband, B., if he be alive, and to his lawful heirs, to and for their sole use and benefit forever," upon death of B. before A., *held* to carry the fee to the heirs of B. as purchasers.

Before TOWNSEND, J., Spartanburg, January, 1901. Affirmed.

Action by Leander C. Bishop *et al.* against J. R. Tinsley. The following is the Circuit decree:

"The plaintiffs brought this action against the defendants for the partition of a tract of land in Spartanburg County, alleging that the plaintiffs owned two-thirds and the defendant one-third thereof, and that they derived title from the same common source; and that the defendant was in possession receiving the rents and profits thereof. The defendant answered, admitting that he was in possession, but denying the other allegations, and alleging that he is sole owner of the land.

"It was admitted before me that the parties all claim from the same common source, to wit: a sheriff's deed to Martha A. Pope, Harriet Reagan and Alice Bishop. On January 17, 1880, these tenants in common partitioned this land among themselves, making mutual deeds to each other. Alice Bishop executed to her cotenants, Harriet Reagan and Martha Pope, deeds in fee simple to her interests in the tracts of land set off to them; but she took from them a deed to their interest in the tract set off to her in the following terms:

" 'State of South Carolina, County of Spartanburg. Whereas, Alice Bishop, Martha A. Pope and Harriet Reagan have become joint owners by purchase at sheriff's sale of the tract of land known as the homestead of M. A. Reagan, deceased, lying and being in the county and State aforesaid, on both sides of Bird's Creek, containing 280 acres. And

whereas, the said parties have become desirous of a partition and division of said tract, according to their respective interests in the same, and after having caused a valuation and survey of said premises to be made, have covenanted, granted and agreed between themselves for the partition and division of the said tract of land to be had and made into lots in manner and form following, that is to say: It is covenanted and granted between the said parties that Alice Bishop shall have for her part and portion of the aforesaid lands, tenements and hereditaments all that tract or lot No. 1 as described below:

" 'Now, know all men by these presents, that we, Martha A. Pope and Harriet Reagan, of the county of Spartanburg, in the State aforesaid, in the consideration of the sum of $100 to us paid by Alice Bishop, of the county of Spartanburg, in the State aforesaid, have granted, bargained, sold and released, and by these presents do grant, bargain, sell and release to Alice Bishop all that tract or lot of land No. 1.

" 'All that tract of land in Spartanburg County, South Carolina, known as lot 1 of the M. A. Reagan homestead, on both sides of Bird Creek, waters of South Pacolet River, beginning at a stake in the fork of the spring branch on the Howard Gap road and running thence N. 79 1-4 E. 15 chains to a stake; thence S. 36 1-2 E. 10 chains to a stake in the original line; thence N. 79 1-4 E. 6.50 chains to a dead red oak; thence N. 10 E. 22.50 chains to a black oak; thence N. 83 3-4 W. 38.50 chains to a black oak in the middle of the field; thence S. 82 1-2 W. 12 chains to a rock on Howard Gap road; thence along said road S. 44 E. 21.37 chains to a turn in the road; thence S. 36 1-2 E. 6.60 chains to the beginning corner, containing eighty acres, more or less.

" 'Together with all and singular the rights, members, hereditaments and appurtenances to the said premises belonging or in anywise incident or appertaining: To have and to hold all and singular the premises beforementioned unto the said Alice Bishop during the term of her natural life, and from and after her decease the land and premises above

described shall belong in fee simple and absolute to her husband, Isaac Bishop, if he be alive, and to his lawful heirs, to and for their sole use and benefit forever. And we do hereby bind ourselves, our heirs, executors and administrators, to warrant and forever defend all and singular the said premises unto the said Alice Bishop during the term of her natural life, and after her death to Isaac Bishop, if he be alive, and to his lawful heirs and their heirs and assigns, against us and our heirs and every person whomsoever lawfully claiming or to claim the same or any part thereof.

" 'Witness our hands and seals, this 17th day of January in the year of our Lord one thousand eight hundred and eighty, and in the one hundred and fourth year of the sovereignty and independence of the United States of America. Martha A. Pope, Harriet x Reagan.' Signed, sealed and delivered in the presence of R. M. Tinsley, Elijah Dill.

"Isaac Bishop died before his wife, Alice Bishop, and the plaintiffs claim the two-thirds interest (conveyed in this deed) as the heirs of Isaac Bishop. It was conceded that they are his heirs. After his death, Martha Pope and Harriet Reagan (or their heirs) deeded to Alice Bishop any interest that they may have had in this land, and on the same day she conveyed the land to the defendant, J. R. Tinsley. These facts being admitted, the case was not given to a jury, but was submitted to the Court for the construction of the deed; for on that the issue depends.

"Had Isaac Bishop survived his wife, there could have been no question as to who owned the fee in remainder. The deed expressly provides that after her decease it shall belong in fee simple and absolute to her husband, Isaac Bishop, if he be alive, and to his lawful heirs, to and for their sole use and benefit forever. The defendant claims, however, that as Isaac Bishop predeceased his wife, Alice, the fee did not go into 'his heirs, for their sole use and benefit forever,' but that it either reverted to the grantors or vested in Alice Bishop, or her assign, the defendant herein.

"(1) Did the ultimate fee remain in Martha Pope and

Harriet Reagan, or revert to them on the death of Isaac Bishop? I cannot so hold. The whole tract was divided into three lots, and appraised and valued; and the deed shows that Alice Bishop paid $100, presumably to equalize her cotenants in the division. She made a fee simple title to her cotenants to her interest in the lots she deeded to them, and I must conclude, in the absence of any words indicating a reversion to them, that they intended to part with, and did part with, the fee by the deed which they executed to Alice Bishop and others in remainder. This view is strengthened by the fact that the deed contains a general warranty to 'Alice Bishop during the term of her natural life, and after her death to Isaac Bishop, if he be alive, and to his lawful heirs and their heirs and assigns, against us and our heirs and against every person whomsoever claiming or to claim the same or any part thereof.' This warranty negatives the idea that they intended the land ever to revert to them. · Mr. Hydrick, counsel for the defense, frankly admitted, at the hearing, that he did not think there was any reversion to these grantors, and in this opinion we think he is right.

"(2) Did the remainder in fee vest in Alice Bishop on the death of Isaac Bishop? It is not so stated in the deed. The estate of Alice Bishop in the land is expressly fixed by the terms of the deed as a life estate only, and no contingency is provided for on the happening of which that life estate is to be enlarged. The fact that before deeding the land to the defendant, she took deeds from her former cotenants or their heirs, for any supposed reversionary interest they may have had, tends to prove that she herself did not consider that she had the fee under the deed of 1880, but only a life estate. The defendant's counsel urge, however, that this was a partition of land held in common, and that in the division Alice Bishop took a fee simple in all the lot set off to her, as in a parol partition. In this view I cannot concur. This was not a parol partition, but a partition by mutual deeds, in which the estate conveyed by each cotenant, and to whom conveyed, was explicitly stated. Nor does it appear that this

was purely a partition of land in kind.    While the preamble
of the deed does recite that the division was for partition, it
states also that a valuation was placed on the lots, and the
other cotenants acknowledged the receipt of $100 paid by
Alice Bishop, presumably to equalize the values.    Whether
this money was furnished by the husband, Isaac Bishop, or
his sons, or by whom, it is matter of conjecture; but the
deed shows that for some reason, that when the deed was
executed and received by Alice Bishop, the only estate she
received by it was a life estate.    She is limited to that estate
by the express terms of the deed; and there are no words
added, such as 'her heirs,' or their equivalent, which could in
any way enlarge that estate.    It is clear, therefore, that
neither by law nor by the terms of the deed did the remainder
in fee go either to Martha Pope and Harriet Reagan, or to
Alice Bishop.    Alice Bishop undoubtedly owned the fee sim-
ple in the one-third which she held under the sheriff's deed;
but she held the other two-thirds by the deed of her coten-
ants, and by its terms all the parties thereto are bound.

"(3) To whom, then, did the deed convey the fee in re-
mainder?    Had Isaac Bishop survived his wife, Alice, there
could be no issue on that point.    The deed says expressly
that the land 'shall belong in fee simple and absolute to her
husband, Isaac Bishop, if he be alive,' at her death.    Did this
give him a vested estate, which he could have alienated dur-
ing his lifetime? or only a contingent interest, which would
be defeated by dying before his wife?    Were the words
'and to his lawful heirs, to and for their sole use and benefit
forever,' words of limitation, intended only to enlarge the
estate of Isaac Bishop, if he should survive his wife? or did
they describe a new class to take the remainder in the event
of Isaac Bishop not being alive at the death of his wife and
the falling in of the life estate?    Under the view I take of
the deed, it will not be necessary to decide this question.
Isaac Bishop did not alienate the land, and his heirs will take
it either by inheritance, if we regard the words as words of
limitation, or as purchaser under the deed, if we regard them

as words of purchase.   I think, however, that the latter is
the true construction of the terms of the deed.   It is a well
established rule of construction that all parts of an instru-
ment should be given effect when possible.   This deed had
already given to Isaac Bishop the absolute fee simple in the
land before the addition of the words describing his heirs.
The deed says, 'the land and premises above describel shall
belong in fee simple and  absolute to  her husband, Isaac
Bishop, if he be alive.'   The words 'to his lawful heirs to
and for their sole use and benefit forever,' would be surplus-
age and useless unless intended to describe a class to take in
the alternative contingency of Isaac Bishop not being alive at
the death of his wife.'   The usual method of adding words
of limitation is to convey the land to 'John Doe, his heirs and
assigns forever.'   The insertion into this deed of the words
to Isaac Bishop, if he be alive, *'and to'* his lawful heirs, etc.,
is unusual, and indicates an intention to give a new direction
to the estate in some contingency.   And the addition of the
words 'to and for their sole use and benefit forever,' after the
words 'his lawful heirs,' expresses an intention that they are
to take the estate in some contingency, 'for their own use and
benefit,' and not merely to enlarge the estate of Isaac Bishop,
if he should be alive at his wife's death.   It cannot mean that
they were not to take it 'for their sole use and benefit forever,'
if Isaac Bishop were dead when his wife's life estate termi-
nated.   The warranty clause emphasizes this idea by war-
ranting the premises to Alice Bishop during the term of her
natural life, and after her death to Isaac Bishop, if he be
alive, and 'to his lawful heirs and their heirs and assigns.'
The use of the words 'to his lawful heirs *and their heirs,'*
constitutes a new stock to take as purchasers.   *McIntyre* v.
*McIntyre,* 16 S. C., 194.   It is true, that the warranty clause
of a deed cannot enlarge the estate granted in the tenendum,
but when there is an ambiguity, the whole deed should be
construed together, to remove the ambiguity.   Moorman's
Limitations Estates, page 6.   There is frequently an am-
biguity as to whether the word heirs is used as a word of

limitation or as a word of purchase. In this deed there is an apparent ambiguity; and in order to remove such ambiguities the Supreme Court of this State has laid down certain established principles. Words may be changed when necessary, or supplied when obviously intended. In *Seabrook* v. *Mikell,* Chev. Eq., 90, the Court says: "The word "and" is often construed "or." If that is done here, the ambiguity is removed, and the intention is made clear. The deed would then read: The land described "shall belong in fee simple and absolute to her husband, Isaac Bishop, if he be alive, (or) to his lawful heirs to and for their sole use and benefit forever.'" In *Clark* v. *Clark,* 19 S. C., 351, the Court says that words may be supplied which are necessary and were obviously intended. The apparent ambiguity in this deed is removed by supplying after the words, 'if he be alive,' the obviously intended alternative words, 'if he be not alive,' as thus indicated: 'Unto the said Alice Bishop, during the term of her natural life, and from and after her decease the land and premises shall belond in fee simple and absolute to her husband, Isaac Bishop, if he be alive, and "(if he be not alive)" to his lawful heirs to and for their sole use and benefit forever.' I am satisfied that this is the true construction of this deed, and that it determines the rights of all the parties hereto.

"It is, therefore, ordered and adjudged, that a writ of partition do issue for a division of the land among the parties hereto according to their respective rights and interests as set forth in the pleadings."

From this decree, the defendant appeals.

*Messrs. D. E. Hydrick* and *Stanyarne Wilson,* for appellant, cite: *As to transmissibility of contingent remainders:* 23 S. C., 225; 26 S. C., 472; 2 Hill Ch., 642; 10 Rich. Eq., 394; 42 S. C., 342. *The term "heirs" should not be here construed as a word of purchase:* 23 S. C., 236; 36 S. C., 301; 17 S. C., 537; 19 S. C., 181.

*Messrs. Nichols & Jones,* contra (no citations).

May 12, 1902. The opinion of the Court was delivered by.

MR. JUSTICE GARY. The practical question presented by the appeal herein is whether the plaintiffs, who are the children of Isaac Bishop, have an interest in the land in dispute, under the first deed of conveyance to Alice Bishop. The facts are set out in the decree of his Honor, the Circuit Judge, which will be reported. The conclusion of the Circuit Judge is so fully sustained by his reasoning that we deem it necessary to add only a few words.

The habendum clause of said deed is as follows : "To have and to hold all and singular the premises before mentioned unto the said Alice Bishop during the term of her natural life, and from and after her decease the land and premises above described shall belong in fee simple and absolute to her husband, Isaac Bishop, if he be alive, and to his lawful heirs to and for their sole use and benefit forever." The pivotal fact in the construction of said deed is that it was unquestionably the intention of the grantors to convey all their right, title and interest in the land in dispute. It cannot be successfully contended that the fee was conveyed to Alice Bishop, for she was only to have the land during her natural life. Nor can it be said that her husband, Isaac Bishop, became the owner of the land in fee, because the contingency upon which he was to take the land did not happen. The intention to dispose of the entire fee cannot be carried into effect, if we construe the words, "and to his lawful heirs to and for their sole use and benefit forever," as words of limitation, intended only to enlarge the estate of Isaac Bishop, if he should survive his wife. This intention may, however, be made effectual, if we construe the words as describing a class to take the remainder in the event of Isaac Bishop not being alive at the death of his wife. The word "heirs" in this case is a word of purchase and not of limitation.

It is the judgment of this Court, that the judgment of the Circuit be affirmed.