## JAMES LOVE *v.* JAMES LOVE, JR., ANNIE K. HART AND THE HENRY WATERHOUSE TRUST COMPANY, LIMITED, A CORPORATION.

### APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED NOVEMBER 29, 1905.     DECIDED DECEMBER 11, 1905.

### FREAR, C.J., HARTWELL AND WILDER, JJ.

VOLUNTARY CONVEYANCE TO TRUSTEE—*whether of a testamentary nature —whether revocable because grantor meant it to be, and thought it was so and was not advised of necessity of reserving power to revoke —refusal of amendmnt of bill.*

> The plaintiff, upon being released from a spendthrift guardian-ship, August 28, 1901, conveyed property to J. L. Jr., and A. K. H., and also to A. L. R., in consideration of his regard and affection and of $1., and in the same indenture conveyed other property to a trustee in trust with certain power to sell and invest proceeds and to pay to him the income for his life and, at his death, to convey the property and its proceeds or the investments thereof to J. L. Jr., and A. K. H. Becoming desirous of revoking the trust he declared in writing, April 5, 1904, that, while he ratified the trus-tee's acts so far, he revoked the appointment of a trustee and the trusts declared in the deed. He afterwards brought this suit against the trustee and beneficiaries to obtain a decree declaring that he had revoked the trusts and that they are now revoked and requiring the trustee to cease acting as such and to reconvey the

property to the plaintiff and account to him for the money received; also for a decree that neither of the beneficiaries has any right in the property to be reconveyed. The plaintiff claimed that the deed was revocable by him because his bill avers that it was made voluntarily, for the use of apparent strangers and without consideration from them, without his intention that it be irrevocable and with his understanding and belief that it was revocable and could be rescinded by him at any time and that his attorney, who prepared the instrument, did not advise him that he ought to make provision for revoking the trust. The judge, after sustaining a demurrer, refused to allow an amendment and decreed dismissal of the bill without prejudice. Held, as to the amendment, without passing upon its materiality or effect, the case ought not to be remanded with direction to allow it as its refusal was "in the exercise of a discretion with which we are not justified in interfering"; and also: the plaintiff's claims are not sustained,—(1) that the trust is void for indefiniteness, ambiguity and uncertainty, or (2) that the conveyance is a testamentary disposition of property, or (3) that the conveyance is revocable upon the alleged facts, following *Afong v. Afong*, 5 Haw. 191, and *Cummins v. Carter, et al.*, ante, p. 71.

## OPINION OF THE COURT BY HARTWELL, J.

This was a bill in equity to establish the plaintiff's claim that he had a right to revoke a conveyance in trust made by him without reserving a power of revocation.

He bases the claim upon the facts that the conveyance was made voluntarily, without consideration from either of the beneficiaries and without his intention that the trust should be irrevocable but with the understanding and belief that it was revocable and could be rescinded at any time by him, and that he was not advised by his attorney who prepared the instrument that he ought to make provision for revoking the trust.

The conveyance is by indenture "made this 28th day of August, A. D. 1901, at the hour of 2:05 o'clock, p. m.," by and between James Love, "he having been prior to the execution hereof fully released from a spendthrift trust," of the first part, Annie K. Hart of Honolulu, and James Love, Jr., her brother,

in Japan, of the second part, Annie L. Rowe, of the third part. and George A. Davis, designated as trustee, of the fourth part, witnessing that the plaintiff, in consideration of his affection and regard for said Annie K. Hart and James Love, Jr., and of one dollar paid to him by them, conveys to them "and their heirs and assigns forever" all his life estate in certain land, that for like consideration he conveys to Annie L. Rowe certain land in fee, and that in consideration of two dollars paid to him by the trustee he conveys to the trustee and "to his heirs and assigns forever" certain other parcels of land, to hold with the appurtenances "unto the said trustee and to his successors and assigns forever on the following trusts, that is to say":

In trust (1) to manage, collect rents and pay charges; (2) in his discretion to purchase the lessee's right in the land on the Southwest corner of King and Kekaulike streets; (3) as soon as practicable to sell the unleased portions of the said land, and upon securing the lessee's interest therein before said sale to sell that also, but at not less than $25,000, unless said James Love first consent in writing to a sale at a less price; (4) in his dis- cretion to sell "the land or extend the lease on the land on the Southwest corner of King and Kekaulike streets"; (5) "out of the proceeds of the sale of said premises on the Southwest cor- ner of King and Kekaulike streets to pay that certain mortgage for twelve thousand dollars of even date given by the said James Love to Thomas Fitch on said premises"; (6) "to invest the net proceeds of all sales of land * * * after paying said mortgage and after paying to Annie K. Hart one thousand dollars, in good and proper security for the investment of trust funds, and to vary such investments from time to time as in his judgment shall be proper"; (7) "to pay the net income, rents, issues and profits from the said property and investments to the said James Love for life"; (8) upon the death of said James Love, upon the joint requests in writing of said Annie K. Hart and said James Love, Junior, to sell all the said lands and premises then remaining unsold and to pay the net proceeds therefrom in equal shares to the said Annie K. Hart and the said James Love,

Junior"; and (9) "in default of the said requests in writing, to convey the said lands and premises then remaining unsold to the said Annie K. Hart and said James Love, Junior, their heirs and assigns forever, freed and discharged of all trusts herein."

The indenture was signed and acknowledged by the plaintiff and trustee and was recorded.

The bill avers that before executing the indenture and at about the same time the plaintiff mortgaged all his real property in Honolulu to Thomas Fitch to secure payment of promissory notes aggregating $12,000; that January 16, 1902, the trustee, with the plaintiff's consent in writing under the power of sale in the trust deed, sold certain of the property for $20,000, of which $1,000 was paid for brokers' commissions and $2,370 upon the Fitch mortgage notes, reducing the mortgage debt to $10,000, the purchaser securing payment of the rest of the purchase money by his notes secured by mortgage of the property; that the time of payment of the Fitch mortgage was extended until January 16, 1912, the purchaser assuming the payment and Fitch agreeing that his mortgage stand upon an equality with the mortgage by the purchaser; that June 19, 1902, Fitch assigned his mortgage to Bishop & Co., to secure a loan to him of $3,000, which is not yet paid; that June 6, 1903, upon the trustee resigning, the defendant corporation was appointed a new trustee and is now acting as such.

The plaintiff, becoming desirous of revoking the trust, made a written declaration April 5, 1904, declaring that he ratified and confirmed "the lawful acts and doings of the said George A. Davis while acting as his trustee" and "the acts and doings of said Henry Waterhouse Co., Ltd., as my trustee", and that he thereby did "revoke, rescind, vacate and annul the appointment by me of a trustee and each and every of the trusts declared and accepted in the trust deed." The trustee refusing to comply with the plaintiff's request to pay over to him the trust moneys in its hands except the net income thereof, or to reconvey to him the unsold land included within the trust deed, and the beneficiaries claiming that the trusts are irrevocable, the bill prays

for a decree declaring that the trusts were revoked by the plaintiff and are now revoked, and that the trustee be ordered to cease acting as such and reconvey the unsold trust property to the plaintiff and account to him for all moneys received by it as trustee; also that a decree be made declaring that neither of the beneficiaries has "any right, title or interest, legal or equitable," in the property sought to be reconveyed to the plaintiff. The trustee answered, the other defendants demurred and the judge sustained their demurrer and, refusing to allow an amendment, decreed the dismissal of the bill without prejudice, from which decree the plaintiff appealed.

The substance of the amendment is that at the date of the trust deed the plaintiff had been relieved from a spendthrift trust, his guardian having been removed by decree of court and the plaintiff restored to full capacity to manage his own property; that he desired to be relieved from managing it but not to surrender his right to control it except in collecting rents and paying expenses and after being relieved from "an unjust and unnecessary spendthrift trust he had no intention whatever of yielding up to any trustee the right to convey, assign, mortgage or otherwise deal with his property" otherwise than as above mentioned; that he consulted with Thomas Fitch, his attorney in the removal proceedings, who advised him to execute the trust deed; that the beneficiaries were not informed of the deed which was made without their knowledge, and that the plaintiff's understanding, "derived from his consultation with and from the advice of the said Thomas Fitch," was that the trusts were revocable at any time by himself and that the only object of appointing the beneficiaries from the plaintiff's death, as explained to him by his attorney, "was to provide for the possible contingency" of his death before revoking the trusts or otherwise disposing of his property, and that since the execution of the trust deed he "has been more than once informed and given to understand by the said Thomas Fitch" that the trusts "could be at any time by him revoked."

Without passing upon the effect or materiality of any of

the matters averred in the amendment, we do not think that we ought to remand the case with direction to the judge to allow the amendment, the refusal of which by him was an action "taken in the exercise of a discretion with which we are not justified in interfering." *Trust Co. v. Grant Locomotive Works,* 135 U. S. 226; *National Bank v. Carpenter,* 101 *Ib.* 568; *Wilson v. Liliuokalani,* 13 Haw. 470.

We cannot adopt the suggestion of the plaintiff's attorney that the trust is "void for indefiniteness, ambiguity and uncertainty" by reason of the trustee's power being broad enough to permit him so to handle the property that at the grantor's death there would be nothing left for the beneficiaries. There is one parcel of land conveyed which is not included in the trustee's power of sale and the terms of the trust require that either the unsold land or investments representing the proceeds of sales be kept intact until the grantor's death then to be divided equally between the cestuis que trustent.

The plaintiff claims that if the trust is not void for the reason above suggested by him the trust conveyance is "purely a testamentary disposition of property" on the grounds that "the record shows no tie of any kind" between the plaintiff and the cestuis que trustent; that the latter "are invested with no present interest in any property whatever" and "acquire no interest until the death of the appellant and then the interest depends upon the contingency of the existence of unsold lands"; but it is not true that the trust deed vests in the cestuis que trustent no present interest or that they acquire no interest until the grantor's death or that it depends then upon whether land shall remain unsold. The plaintiff in his deed creates the ordinary trust of a conveyance in trust to pay the grantor the income for his life and at his death to convey the trust property to designated persons.

It would be immaterial to any question in this case whether the cestuis que trustent have a vested or a contingent equitable remainder and we have no occasion to discuss the nature of their estates since the gift over would not fail or the fee revert to the donor or his heirs before the contingency, if there were any,

occurred. We do not intimate that a contingent estate is cre-
ated by the deed; we allude to the matter only in order to point
out that the trust would not be imperfect if there were such
uncertainty in regard to persons ultimately to take. It is true
that the record does not show the relation between the grantor
and the beneficiaries, but the indenture recites his regard and
affection as a consideration for his grant to them. The name
of one of them leads one to infer that neither he nor his sister,
the other grantee, is a stranger to the grantor. But the absence
of meritorious consideration for a conveyance to strangers in no
way affects its validity. One has a right to make any legal dis-
position of his property that he thinks fit, whether for those
whom he is legally or morally bound to provide for or others.

The cases cited by the plaintiff, in which the court decided
that instruments were wills and not deeds, are not decided upon
the theory of the invalidity of a voluntary conveyance, and in no
way sustain the plaintiff's claim.

Thus in *Sharp v. Hall*, 5 So. 499 (Ala.), an instrument
admitted to probate as a will gave the grantee no use of the
property during the life of the maker, and was not delivered but
placed in an envelope endorsed: "Not to be opened until after
my death."

*Millican v. Millican*, 24 Tex. 442, was a case in which the
grantor's heirs claimed that his deeds were voluntary donations
not meant to take effect until after his death, and also were in
fraud of the statute of wills. The court held that the deeds oper-
ated as a present disposition of the property and were attended
by a transfer of the property, the donor parting with her entire
control over it, the court saying that equity "will not set aside
a voluntary deed or donation, however improvident it may be,
if it be free from the imputation of fraud, surprise, or undue
influence, and made by the donor voluntarily, when not laboring
under any deception or mistake of facts."

In *Stroup v. Stroup*, 140 Ind. 180, a conveyance to a trustee
required the trustee, at the grantor's request, to convey the land
to such person or persons and upon such terms and for such uses

as the grantor should direct and to pay all the proceeds to him. The grantor's widow brought suit for dower in the granted land which the court allowed her, holding that the trustee had only a naked trust with no power of disposition and that under the statute the conveyance was "void as to the trustee and shall be deemed a direct conveyance to the beneficiary."

In *Burlington University v. Barrett,* 22 Ia. 72, the court held that a certain instrument was testamentary in its nature, partly because it used the word "bequest" with reference to its disposition of certain property and partly because it passed no interest or right until the maker's death.

In *Allison's Executors v. Allison,* 11 N. C. 123, the decedent had executed a will and on the same day another instrument conveying property to trustees to sell the same upon his death and dispose of the proceeds as directed in the instrument. There could be no doubt that this instrument was a will although, as it had not been properly executed, it was not admitted to probate.

In *Crocker v. Smith,* 10 So. 258 (Ala.), an instrument was held to be a will in which a decedent gave to his wife all his estate which he then or might thereafter own. In the absence of covenants of warranty the deed would be ineffectual to convey after acquired property although as to such property it would properly operate as a will. It also contains the clause "This deed of gift to take effect absolutely at my death."

In *Wren v. Coffey,* 26 S. W. 142 (Tex.), the decedent had made a deed conveying his homestead to his son "should we not sell or dispose of the same before death." It does not appear that the deed had been delivered and it was held to be a will.

In *Hixon v. Witham,* 1 Chan. Cas., 22 Eng. Rep. 784, an instrument, claimed to be a will, began with the words, "This indenture." At first it was questioned whether it was a will because of the use of those words "but the defendants deserted that point and yielded that it was a will."

In *Peacock v. Monk,* 1 Ves. Sr. 130 (27 *Ib.* 936), a party had made two instruments, one of which he called a deed by way of agreement between himself and another person and the

other he called a will. The decedent's creditors calimed the benefit of a trust under the deed. Lord Hardwicke said, "B. being both executor in the will and contractor in the deed, and both instruments being executed at the same instant (as it must be taken, being on the same day), it speaks the whole to be a testamentary act. In several cases, the nearness of one act to another makes the Court take them as one; so that it is a testamentary act, though not strictly so, because not revocable."

In *re Morgan's Goods*, 1 L. R. Prob. & Div. 214, the decedent conveyed his property to trustees for the benefit of his children, directing in the conveyances that they were not to take effect until after his decease.

In *Attorney General v. Jones*, 3 Price, 368, A, by indenture containing a power of revocation, assigned leasehold property to C, and D, also certain stock and other personal estate upon trust to himself and, after his decease, to B, an illegitimate daughter; A, subsequently, by will, confirmed the deed, except as to certain particulars, and appointed the trustees in the deed as executors; he did not transfer the stock or part with possession of the leasehold or even inform the trustees of the deed. The Barons of the Exchequer, one dissenting, held that the property assigned was liable to legal duty. "This decision has been generally condemned and may be regarded as overruled." 1 Jarman, Wills, 6 Ed. 23.

Finally, the plaintiff claims that his trust deed is revocable because "without consideration, purely voluntary and without even the knowledge of the cestuis que trust," and because "it was made (merely for business convenience) after the appellant had been relieved from a spendthrift trust (but under professional advice and assurance), and with the full belief that it was revocable at any time." There is enough in the bill, without looking at the amendment, to show that he made the deed after being relieved from the spendthrift trust and also that he made it under professional advice, or, which is the same thing, that his attorney, who prepared the deed, did not advise him that he ought to make a provision to revoke the trust.

We may also infer from the fact that the conveyance to a trustee would relieve the plaintiff of the care of managing the property "as a matter of business convenience" that this was his object as well as to benefit those to whom, in the same indenture, he had out of his regard and affection for them, gratuitously assigned a leasehold. These are the only motives for the settlement expressed in the indenture. In equity a conveyance made or a contract entered into by a person of legal and mental capacity may be declared void if induced by fraud, duress, undue influence, misrepresentation, or, in contracts, of mutual mistake of fact or of mistakes of fact and law. In such cases the act is voidable but does not become void by the party calling it so. So an act may be so improvident and unreasonable as to justify the inference that it was done under some delusion or by one whose mind was so enfeebled as to render him incompetent to transact business, when proof would be required to show that the act was done intelligently, with knowledge of its consequences. The case presents none of these conditions unless in the alleged fact that the plaintiff intended to make, and thought he was making, a revocable, and not an irrevocable, conveyance and that he was not advised of the necessity of a power of revocation. A grantor's ignorance of the contents of his voluntary deed of gift or of its legal effect or his belief that it contains an important provision which it does not contain or the failure of his attorney to advise him of its contents and their legal effect are facts which, under certain circumstances, justify an inference of his mental incapacity, but there is no rule that such facts alone are sufficient to enable the grantor to avoid his deed.

In the recent case of *Cummins v. Carter, et al.,* ante p. 71, the plaintiff sought to obtain a revocation of a voluntary settlement made by him because, among other reasons, at the time he executed the trust deed he did not understand its provisions and had no legal advice as to their effect, which he thought was only for a special purpose, not realizing that the deed was irrevocable, and because he was not advised to have a clause of

revocation inserted and believed that the deed, except as to certain provisions for the benefit of his wife, was in the nature of a testamentary disposition of his property. The court held that if the plaintiff did not fully realize the scope or effect of the deed "it was his duty to have ascertained its effect and he cannot complain now that he was mistaken as to them, not having taken the necessary steps to inform himself."

Most of the cases cited by the plaintiff in the case before us were considered by the court in *Kellett v. Sumner,* 15 Haw. 86, in which a voluntary settlement was held to be revocable by the settlor, under the circumstances of that case, one of the material facts being that the settlement gave the settlor during his lifetime the use of the property, which, at his death, was to go to such persons as he should, by a certain will, made, as was supposed, contemporaneously, name and appoint, and, in default of such appointment, to his heirs at law. The deed recited that the settlor was a resident of Tahiti, then temporarily in Honolulu, and that he desired that his property in Hawaii should be "in charge of some competent and disinterested person." The deed showed, as the court thought, "that it was of a temporary nature and for his own convenience." There is no parallel between that and the present cases.

In *Afong v. Afong,* 5 Haw. 191, the plaintiff thought that he retained the power of disposing of the trust property otherwise than as expressed in the deed of settlement which contained no power of revocation. The court held that a mistake of the legal effect of the instrument of settlement would not avail the settlor and also that, even in the absence of a clear intent to make an irrevocable gift where a sufficient motive for the gift exists, the settlement cannot be disturbed. A reference to the files in that case shows that the attention of the court was called to the same English decisions as are cited by the plaintiff in this case, and that the court, while considering that they go further than the Massachusetts cases in authorizing equity to vacate a voluntary settlement, adopted the Massachusetts rule as expressed in *Viney v. Abbott,* 109 Mass. 300, and *Sewell v. Rob-*

*erts,* 115 *Ib.* 22. The case did not show what advice the settlor had from his attorney who drew the deed, but as the expressed object was to protect the settlor's Hawaiian wife and children the settlement had to be irrevocable whatever the settlor may have wished or thought.

Although this case appears to us to be controlled by the ruling in the *Afong* and *Cummins'* cases, we have looked into the cases cited by the plaintiff with the conclusion that they do not justify us in modifying those rulings or in sustaining the plaintiff's contention.

Thus in *Wollaston v. Tribe,* 9 L. R. Eq. Cas. 44 (1869), a lady, in contemplation of marriage, had settled property on herself for life then on her husband for life, then on her children and those of any future marriage and, if no children, on nephews and nieces. The husband died without issue and the lady not having married again, it was held that the settlement then subsisting was purely voluntary and not within the consideration of marriage. Comment is made upon the importance of advice to the settlor that her deed would be irrevocable as to the nephews and nieces and upon the fact that the nature of the settlement had never been fully explained to her, but the case was decided upon the ground that the gift over to the nephews and nieces after the husband's death was "not within the consideration of marriage." In *Coutts v. Acworth,* Ib. 519 (1870), a lady having, in anticipation of marriage with J. B., settled property upon him for life over to nephews and nieces, the deed containing a power to revoke the trusts subsequent to his life estate, by her will, made after marriage, revoked all the trusts and gave £1000 to her husband. Held: that while the power of revocation extended only to the remainder the husband must elect whether to take under the will or the deed. In *Everitt v. Everitt,* 10 *Ib.* 405 (1870), a settlement made by a young lady of the age of twenty-one, in order to provide for herself and her children if she married, reserving no power of revocation, being made precisely as if a definite marriage was con-

templated, was held to be so imprudent and improvident that it could not be sustained.

In *Prideaux v. Lonsdale,* 1 DeG., J. & S. 335 (1863), a young lady, induced by executors, made a settlement of bank stock upon trust for herself for life and afterwards as she should by deed or will appoint, in default of appointment, for her next of kin who would be entitled if she died intestate without having married, with the proviso that on her request the trustees should dispose of the fund as she might direct. She executed this deed without any professional advice and married about two months after. Upon her death her husband brought suit to set aside the settlement. The only reason suggested to her for the settlement was to prevent her brothers from troubling her for money. She was engaged to be married to the plaintiff at the time but of this the executors, who advised her to make the deed, were not aware. The court held that it was improper to deal with the lady's legacy in the way in which it was dealt with; that the executors "ought to have paid it directly to the lady herself, leaving her to exercise an unfettered judgment as to the mode in which it should afterwards be dealt with," and that the settlement was one "which it is impossible to suppose that the lady understood, which was not properly prepared either in form or in substance, which it was not reasonable or prudent for her to execute and against which she ought to have been cautioned."

In *Richards v. Reeves,* 149 Ind. 427, an old and infirm person conveyed her real estate to her son upon condition that he pay a certain sum of money to their grandchildren upon arriving at the age of twenty-one years, reserving a life estate to herself and husband and intending to reserve the right to revoke the deed should she find the interest reserved to herself and husband insufficient for their support, but by ignorance and mistake on the part of the scrivener, as well as on her own part, the right of revocation was not expressed in the deed. The deed was set aside, the court saying, "Equity will set aside such a voluntary gift when it is made to appear that the donor did not

intend to make it irrevocable or where the settlement would be
unreasonable or improvident for lack of a provision for revoca-
tion." The latter ground was sufficient.

In *Fredericks' Appeal* 52 Pa. 338, a decedent had placed his
property in trust for his life and, after his death, for his chil-
dren. The court, for reasons, which are not clear to us, held
that the grantor's "manifest intention was simply to promote
his own convenience and protect his own interests and that the
utmost that could be made of the deed was that it was a mere
covenant of posthumous gifts and, as such, nudum pactum."
This case is regarded in 186 *Ib.* 538, and 202 *Ib.* 558, as a case
of "rare and exceptional facts." In *Russell's Appeal,* 75 *Ib.*
269, a marriage settlement was made providing for the intended
husband, as well as the settlor, and after her death to convey
the estate to her children, according to testamentary appoint-
ment, except such provision for her husband as she might make,
by will, out of the income and, in default of issue, to convey
to her brothers and sisters or their issue as she might appoint.
The wife surviving the husband, who died without issue,—
held: that under the circumstances the absence of a power of
revocation was a mistake, none of the parties concerned nor their
counsel having contemplated the contingency of the plaintiff
surviving her intended husband; also that as there was no motive
or reason for making the settlement apply to the case of the
wife surviving her husband, but, on the contrary, this was
against the donor's interests or desire and without intention she
had "done this unwise and evidently mistaken thing." The
court said: "In the absence of a certain intent to make the gifts
irrevocable the omission of a power to revoke is prima facie
evidence of a mistake and casts the burthen of supporting the
settlement upon him who, without consideration to benefit him
or protect the donor, claims a mere gratuity against one as sui
juris capable of taking care of his own estate." The mistake,
the court thought, was not one simply of law but of fact, "so
mixed with the legal effect of the writing that equity will use
the mistake of fact as a means of relief. The mistake here

was in not perceiving or being conscious that a case was left unprovided for which might happen, and in which event the settlor would desire to make a provision agreeable to her wishes and will, * * * not a mistake merely of the legal operation of the instrument but a mistake flowing from the want of conception or a misconception of facts which might occur and were not provided for." In *Miskey's Appeal*, 107 *Ib*. 611, it was held that in the absence of a proof of a distinct intention to make an irrevocable gift the conveyance would be set aside *if the other circumstances of the case required it*. The other circumstances included undue influence, great mental weakness from excessive use of intoxicating liquor and a deception practiced by the donees.

In *Leiau, et al., v. Kahaikalua,* 7 Haw. 86, a widow, just before her second marriage, conveyed her property to her brother upon his agreement to support her and allow her to live on the land during her life. The mutual object of this conveyance was to prevent the husband from acquiring any interest in the property. The husband having died, and the plaintiff marrying a third husband who owned property enough to support her and her children, she brought suit to compel her brother to quitclaim the property to her, the object of the conveyance having been accomplished. The court declared the defendant a trustee for the plaintiff and required him to execute a deed of quitclaim to her.

None of these decisions are applicable to the facts of the present case. In *Toker v. Toker,* 3 DeG., J. & S., 492 (46 E. R. 726; 1863), the court says: "It is going too far to say that no voluntary settlement can be valid unless the settlor is advised that there should be a power of revocation inserted in it. What the court has to be satisfied of in these cases, as I apprehend, is this, that the settlement, whether containing or not containing a power of revocation, is the free determined act of the party making it; and the absence of advice as to the insertion of a power of revocation is a circumstance, and a circumstance merely, to be weighed in connection with the other circumstances

of the case." In *Phillips v. Mullings,* 7 L. R. Chan. App. Cas., 248 (1871), the court says of a voluntary deed: "All that the law requires in a deed of this description is that it should be effective, and should not contain any extraordinary clauses, unless those clauses are shown plainly and distinctly to have been brought to the notice of the settlor, and to have been understood by him. It is not necessary to shew that the usual clauses inserted by conveyancers were explained; but any unusual clause must be shewn to have been brought to his notice, explained and understood."

The plaintiff acknowledged his deed of settlement in the statutory form declaring that he made it freely and voluntarily for the uses and purposes therein set forth. The ordinary view of a layman in executing a deed is that it is not subject to revocation by himself. There is nothing unusual in this deed; on the contrary, it appears to have been a reasonable and prudent act on the plaintiff's part. He suggests no reason for his present desire to revoke the deed, hence we infer that he desires to make other persons than those mentioned in the deed the objects of his bounty. We are not prepared to think that any attorney who practices before this court would advise the plaintiff that if he should execute and deliver this deed of trust he could afterwards revoke it at will, for if the attorney knew no better than this he was unfit to practice law. On the other hand, if the plaintiff told his attorney that he wished to place his property with a trustee to pay him the income for his life and then to convey it to J. L., Jr., and A. K. H., but that he might change his mind and so wished the deed to reserve his right to revoke it whenever he liked, an attorney who would draw a deed omitting to follow such instruction would deserve disbarment and to be held in damages. Moreover, in such a case we ought to decree revocation of the deed, not because the plaintiff misunderstood its effect, or understood that he could revoke it, but because he had been deceived into making it. But the case does not go to

this extent and shows no ground for declaring the deed to be revocable.

The decree appealed from is affirmed.

*H. E. Highton* for plaintiff.

*A. G. M. Robertson* for defendants.

*D. L. Withington* for the trustee.