ANNIE GARVIE EVANS *v.* BISHOP TRUST CO.,
LIMITED.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT

ARGUED APRIL 1, 1912                    DECIDED APRIL 8, 1912

ROBERTSON, C. J., PERRY AND DE BOLT, JJ.

TRUSTS—*construction of trust in favor of heirs and legal representa-
tives.*

Where in contemplation of remarriage, property was conveyed
by A. G., a widow, to a trustee to hold and manage the estate, pay
the net income to the grantor until her son J. shall attain the
age of twenty-one years, if the grantor shall live so long, and upon
J. attaining the age of twenty-one, to convey, transfer and deliver
to J. one-half of the property, and to hold the other one-half there-
of in trust for the grantor absolutely; that in the event of the
death of J. before the death of A. G. and before attaining the age
of twenty-one, to hold all said property in trust for A. G. abso-

Evans v. Bishop Trust Co., 21 Haw. 74.

lutely; and in the event of the death of the grantor before said J. shall have attained the age of twenty-one, the trustee, upon the death of the grantor to convey, transfer and deliver one-half of the property to the heirs and legal representatives of the grantor and to hold the remaining one-half in trust for said J. absolutely, the apparent intention of the grantor being to preserve the corpus of the estate for the benefit of her son J. and such other children as may be born to her, in case she should die before J. attains the age of twenty-one, the words "heirs and legal representatives" are to be construed as words of purchase and description.

SAME—*revocability of—absence of clause of revocation.*

A trust of this character cannot be revoked by the settlor as against remainder-men in the absence of mistake or fraud. The omission of a clause of revocation without other circumstances than the mere mistaken belief on the part of the settlor that she possessed the power of revocation does not give rise to any inference which could be taken as a ground for the revocation of the trust.

REMAINDERS—*destruction of contingent, through merger of estates.*

The common law doctrine as to the defeating of·contingent remainders through the merger of estates has never been recognized in Hawaii.

OPINION OF THE COURT.BY ROBERTSON, C. J.

In this case the respondent obtained the allowance of an interlocutory appeal from an order made by the court below overruling a demurrer to complainant's petition. The petition shows that on the 8th day of January, 1909, the complainant conveyed, assigned, transferred and delivered certain real and personal property to the respondent, its successors and assigns, upon the following trusts: To hold and manage the property, collect the income thereof, and pay the net income to the complainant until James Garvie, the son of the complainant and Alexander Garvie, deceased, shall attain the age of twenty-one years, if the complainant shall live so long; and upon James Garvie attaining the age of twenty-one years, to convey, transfer and deliver to said James Garvie one-half of the property, and to hold the remaining one-half in trust for the complainant, absolutely; but in the event of the death of said James Garvie before the death of the complainant and before attaining the

age of twenty-one years, to hold all the property in trust for the complainant, absolutely; and in the event of the death of the complainant before the said James Garvie shall have attained the age of twenty-one years, the trustee, upon the death of the complainant, shall convey, transfer and deliver one-half of the property unto "the heirs and legal representatives" of the complainant, and hold the remaining one-half in trust for the said James Garvie, absolutely. The deed recited that a marriage was intended shortly to be solemnized between the complainant and one George H. Evans, who joined in the deed in token of his consent to and approval of the settlement therein made, and the petition contains an averment that the parties have intermarried. The petition also sets forth that the deed "reserved to your complainant no specific power to revoke the trusts created thereunder, although your complainant supposed and believed that said trusts, so created as aforesaid, might at any time be revoked by her, either in whole or in part; and in that mistaken belief, your complainant executed said trust instrument;" that, on the 9th day of January, 1912, the complainant, being desirous of terminating and revoking said trusts as to an undivided one-half interest of the subject matter thereof, and in so far as said trusts should affect all property held in trust solely for complainant, and in order to reinvest title in complainant of said one-half of said trust estate, made demand upon the respondent for a reconveyance of said undivided one-half interest in and to said property; and that the respondent has refused to comply with said demand. Complainant prayed for a decree terminating said trust as to one-half of the property conveyed by the deed, and for the transfer, surrender and delivery thereof to the complainant by the respondent.

The contentions of counsel for the complainant may be summed up as follows: That the maximum interest possible in James Garvie in the property held in trust by the respondent is no more than one-half, since, if he should live to attain the.

age of twenty-one, his mother also surviving, or if his mother should die before he shall have attained that age, leaving him surviving, he would be entitled to only one-half of the trust estate, because, under the second alternative, the remaining one-half would go to the statutory heirs and legal representatives of the settlor; that one-half of the property was put in trust solely for the settlor's benefit; that as the heirs of the settlor could not take as remainder-men there are no "possible beneficiaries not yet in being" to be reckoned with, and the reversion is vested in the complainant; that the course of descent not being interrupted, the heirs and legal representatives of the settlor would take, not under the deed, but under the statute of descents; that, if the limitation to the heirs and legal representatives is to be regarded as an equitable remainder, it is a contingent one, the equitable fee remains vested in the settlor, and the complainant having both the reversion and the intermediate estate the latter is merged in the former and the complainant is to be regarded, in equity, as the absolute owner and, therefore, entitled to demand a reconveyance from the trustee; and that a conveyance by the complainant to a third party, or a reconveyance to her by the trustee, would defeat the equitable contingent remainder. Counsel say that what they have referred to as a contingent remainder is, more accurately speaking, a springing use.

Upon the above reasoning, together with the fact that the complainant, when she executed the deed in question, believed that she might at any time revoke the trusts, counsel conclude very earnestly that the complainant is entitled to the relief sought.

The argument rests largely upon the assumption that the "heirs and legal representatives" cannot take as remaindermen; that is to say, that those words cannot be regarded as words of purchase or description. The petition contains no statement of the motive or reason for the creation of the trust by the complainant, so we are left to infer her motive from what appears

from the deed itself. The natural inference to be drawn from what appears on the face of the deed is that, after securing the net income of the property for herself, the settlor desired to preserve the corpus of the estate for the benefit of her son James, and such other children as may be born to her, in case she should die before James attains the age of twenty-one years. In order to effectuate the intention so disclosed it is necessary that the words "heirs and legal representatives" be construed, not as words of limitation, but of purchase and description. They are frequently so used. *Thurston* v. *Allen,* 8 Haw. 392; *Ebey* v. *Adams,* 135 Ill. 80, 90; *Bishop* v. *Tinsley,* 41 S. E. 895, 898; *Wettach* v. *Horn,* 201 Pa. St. 201, 206; *Hamilton* v. *Wentworth,* 58 Me. 101, 105; *Clarke* v. *Cordis,* 4 Allen 466, 480; *Ewing* v. *Jones,* 130 Ind. 247.

In *Brown* v. *Wadsworth,* 168 N. Y. 225, 233, the court said, "In ante-nuptial contracts, with a view to a subsequent settlement, the limitation of real estate to the husband and wife for their lives and the life of the survivor, remainder to the heirs of the bodies of the parents, or to their 'right heirs', made such heirs purchasers, otherwise the provision intended for such heirs might be defeated by the conveyance of their parents or of the trustee, a result which equity would not tolerate."

The claim that the heirs and legal representatives would take, not under the deed, but under the statute of descents; that James Garvie has no interest in the one-half of the estate which is limited to the heirs; and that there are no possible beneficiaries not yet in being to be reckoned with, thus falls to the ground.

Many cases might be cited to show that under such circumstances as are here presented the court, at the instance of the settlor, would not be justified in annulling the trust, and that contingent interests are as much entitled to protection as those which are vested.

In *Watson* v. *Bonney,* 2 Sandf. 405, 417, a woman, in contemplation of marriage, conveyed her estate to a trustee in fee,

reserving to herself the income for life, the direction of the investment of the capital by the trustee, the power to dispose of the whole by will, and the restoration of the property to herself if she should, survive her husband. The deed provided that in case of the decease of the grantor without making any appointment, the trustee should pay over and transfer the estate to such person or persons as would be her legal representatives by the statute for the distribution of intestates' estates. The case seems to have been affected to some extent by statute, but beyond that the court held that, "The term 'legal representatives' is not used in this instrument in its ordinary sense. It clearly does not mean executors or administrators. It is those legal representatives who are designated by the statute of distributions of intestates' estates." And that "In this construction of the trust deed, the infant children of the plaintiff have a contingent future estate which the court cannot divest."

In *Dickey* v. *Goldsmith,* 111 N. Y. S. 1025, a married woman conveyed certain property to her husband and two others in trust to pay the net income to her during her lifetime and upon her death to pay over, divide and convey the principal of the trust estate among such persons as the grantor should by her will appoint and in default of such appointment by will to convey the property to the heirs at law and next of kin of the grantor. The grantor had three children living. The court said, "The trust was not terminable at the option of the settlor. Nor is any right to terminate or change it during her lifetime reserved in the settlor in the deed of trust. The only right of control of the principal which is reserved in the deed of trust is the right to dispose of it by will. The children of the settlor have, therefore, a vested interest in this principal, which is subject to being divested by the will of the settlor. The court is without power to divest these infant children of their interest in this future estate."

Counsel for the complainant account for the holding in that case that the children had vested interests in the estate by rea-

son of a statute of New York which makes certain remainders vested which at the common law would be held to be contingent. But clearly the court there proceeded on the theory that the heirs and next of kin would take as purchasers, and whether the interests given them were vested or contingent would be unimportant.

In *Sands* v. *Old Colony Trust Co.,* 195 Mass. 575, certain personal property was conveyed by deed to a trustee with power to sell and reinvest, to pay to the settlor the net income and such parts of the principal as in the trustee's discretion would be warranted by circumstances, the fund, after the settlor's death, to be paid to his heirs, or if he left a will, to his executors. The court said (p. 580), "These circumstances are inconsistent with any right on his (settlor's) part to claim the absolute ownership of the fund or the revocation of the trust. Those who shall be at his decease the beneficiaries under his will or his legal heirs will then become entitled to the fund. *Crawford* v. *Langmaid,* 171 Mass. 309, and cases there cited. Here, as in *White* v. *Woodberry,* 9 Pick, 136, there is nothing vested in the plaintiff but the right to the income of the property and to such part of the principal sum as the trustee shall see fit to pay to him."

In *Anderson* v. *Kemper,* 116 Ky. 339, the plaintiff conveyed certain property to his father upon the expressed consideration of the sum of $9000. It was shown, however, that the real consideration was the giving of a bond conditioned to pay the grantor an annuity and upon his death to pay to his heirs the sum of $7000. This was held to constitute a trust whereby the plaintiff was to have the beneficial use of the property during his lifetime and his heirs after him. The court proceeded upon the theory that the grantor's heirs would take as purchasers and held the trust to be irrevocable in the absence of the consent of all the beneficiaries.

In *Paul* v. *Paul,* L. R. 20 Ch. D. 742, by a marriage settlement the wife's property was settled, after life estates in the

husband and wife and in default of children, in the event of the wife surviving, on her, and in the event of the husband surviving, as the wife should by will appoint, and in default, on her next of kin, excluding the husband. It was held that the trust in favor of the next of kin could not be revoked, and that although there was no possibility of issue, the husband and wife together were not entitled to the corpus of the settled fund.

In *Love* v. *Love*, 17 Haw. 206, 211, this court said, "It would be immaterial to any question in this case whether the cestui que trustent have a vested or a contingent equitable remainder and we have no occasion to discuss the nature of their estates since the gift over would not fail or the fee revert to the donor or his heirs before the contingency, if there were any, occurred. We do not intimate that a contingent estate is created by the deed; we allude to the matter only in order to point out that the trust would not be imperfect if there were such uncertainty in regard to the persons ultimately to take."

In *Dickey* v. *Goldsmith, Sands* v. *Old Colony Trust Co.*, and *Paul* v. *Paul*, in holding the trusts to be irrevocable notwithstanding that the settlors had reserved the power to dispose of the principal estate by will, the courts went farther than we are required to go in this case.

Counsel for the complainant cite 1 Perry on Trusts (4th Ed.) Sec. 104, based on the case of *Nightingale* v. *Nightingale*, 13 R. I. 113, for the proposition that, "where the trust does not break the natural course of descent of the property, and is not needed for the protection of the life *cestui*, who is the grantor, equity will, on the application of the *cestui*, terminate the trust and decree a conveyance."

In the *Nightingale* case, a woman, contemplating marriage, conveyed her estate to a trustee who was to hold and care for the trust property, pay the income to her, make sales at her request, and convey the property to her if she survived her husband; and in case of her death the trustee was to hold to the

use of her testamentary appointees, and if she died intestate, to the use of her heirs at law. The court remarked that the course of descent was not broken, and went on to say that, "The trust was created in consequence of a promise made by her (the settlor) to her father before his decease. Since said promise was made, to carry out which the deed was executed, the law regarding the law of property of married women has been so far changed that a married woman can at any time have a trustee appointed to manage and hold her property, she can receive the rents of it herself, and can thus have as full control of it as she could under this trust, except that she cannot sell certain sorts of property without her husband joining in the conveyance. We see no good reason why a decree should not be made for a reconveyance, discharged of the trust." (p. 116) Such reasoning has no application to the case at bar, and in so far as the case is to be considered as opposed to the cases above cited it is against the weight of authority. It may be that the decision was affected by the operation of the Rule in Shelley's case. See *Angell, Petitioner,* 13 R. I. 630, and *Taylor* v. *Lindsay,* 14 R. I. 518. If that is so the case would be of no value as authority in a jurisdiction where, as here, that rule is not in force.

It is said that the contention here made found approval in the case of *Kellett* v. *Sumner,* 15 Haw. 76, 84. But it is clear that it received no special consideration by the court. The contention was advanced by counsel in that case but the court in referring to it pointed out that the limitation contained in the instrument involved there was not to "heirs" but to "nearest blood relatives."

It is further contended by counsel for complainant, on the assumption that the equitable reversion remains vested in the settlor, that her immediate estate is to be regarded as having merged in that reversion with the result that the contingent remainder in the heirs and legal representatives has been des-

troyed. As to this we deem it enough to say that the common law doctrine as to the defeating of contingent remainders through the merger of estates has never been recognized in this jurisdiction. *Godfrey* v. *Rowland,* 16 Haw. 377. We perceive no good reason why this trust should not be given full effect according to the apparent intention of the settlor.

The remaining point is as to the effect of the fact that although the settlor believed that the trust might at any time be revoked by her, no clause giving her power so to do was inserted in the deed. This question has received much consideration in former cases in this court. *Afong* v. *Afong,* 5 Haw. 191; *Kellett* v. *Sumner,* 15 id. 76; *Love* v. *Love,* 17 id. 206. The rule established by those cases is that a trust of the character of that now under review cannot be revoked by the settlor as against remaindermen, in the absence of mistake or fraud. The question always must be whether the trust instrument appears to have been executed freely and intelligently with the intention that it should not be revocable. The omission of a clause of revocation is sometimes regarded as a circumstance, which, taken together with other circumstances, tends to show mistake or undue influence. But the absence of such a clause from the deed without circumstances other than the mere mistaken belief on the part of the settlor that she possessed the power of revocation does not give rise to any inference which could be taken as a ground for the revocation of the trust. In this case the intention of the settlor was to make provision for her son and other possible children, and her approaching marriage furnished the motive. We hold, therefore, that the trust is not revocable at the will of the complainant.

The order overruling the demurrer is reversed, and the case is remanded to the circuit judge.

*W. B. Lymer* (*Thompson, Wilder, Watson & Lymer* on the brief) for complainant.

*C. H. Olson* (*Holmes, Stanley & Olson* on the brief) for respondent.