JOHN A. CUMMINS v. JOSEPH O. CARTER, TRUS-
TEE; KAUMAKAOKANE, THOMAS AND JOHN T.
WALKER; MATILDA W. CONSTABLE, JANE P.
C. MERSEBERG, KING THOMAS, TERRILLA M.
JOY, MALIE M. BLAISDELL; JAMES, MAY, JANE,
MATILDA, CHARLES, ABIGAIL, IDA, WILLIAM,
HELEN AND MADELINE MERSEBERG, MINORS;
THOS. P., JOHN A., THOMAS, RAPLEE, MOSE-
LEY AND WOOD CUMMINS; CHARLES MAHOE,
FLORA HIRAM AND MAY C. KIBLING.

APPEALS FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED OCTOBER 2, 1905.    DECIDED OCTOBER 23, 1905.

FREAR, C.J., HARTWELL AND WILDER, JJ.

DURESS—*threats do not constitute, unless operative.*

A bill to set aside a trust deed on the ground that it was pro-
cured from the petitioner by threats made by his wife's attorneys
that if he did not agree upon a separation and make provision for
her she would institute proceedings for divorce or separation or
to place him under guardianship as a spendthrift and in such pro-
ceedings expose his whole manner of living, the fact being that he
was then living with another woman, cannot be sustained, even if
the threat of exposure in addition to the threat of civil proceedings
might in itself constitute duress, when the bill shows also that the
petitioner was able to resist the threats and executed the deed not
because he was overcome by them but in reliance upon advice
given at his request by his confidential friend and agent.

MISTAKE—*as to scope of deed, due to ignorance of English language or
legal phraseology, not sufficient.*

A trust deed made for the benefit of the maker and his family
cannot be set aside on the ground that the maker did not fully
realize its scope or effect on account of his imperfect knowledge of
English or legal phraseology. He was not mentally weak, no fraud
was practiced on him, the deed was read to him, and he trusted
his agent's advice that it was all right. It was his duty to have

had it translated or explained to him or take the consequences.

UNDUE INFLUENCE—*presumption of, from relation of principal and agent, rebutted by other allegations of the bill.*

The presumption, if any, that a trust deed made by a principal for the benefit of himself and his family was procured by the undue influence of his agent, from the mere fact that the agent who had previously been in charge of the entire estate was to be trustee under the deed, is slight, and is held to be rebutted in this case by other allegations of the bill.

### OPINION OF THE COURT BY FREAR, C.J.

This is a bill in equity for the cancelation of a trust deed on the grounds of duress, undue influence and mistake. The case comes here on appeals from a decree sustaining demurrers filed by the several defendants and dismissing the bill.

The trust deed was made October 1, 1896, between the petitioner as party of the first part, his then wife Kahalewai, who died September 10, 1902, as party of the second part and the defendant Carter as party of the third part. The other defendants are joined as parties claiming interests under the deed.

The allegations made chiefly in support of the ground of duress are substantially as follows: That in the latter part of September, 1896, W. A. Kinney, as attorney at law for Kahalewai, called on the petitioner at his residence and informed him that she had left him "for good," that she was determined to get a divorce or separation and a division of the property, that if petitioner would agree to a division of the property and a separation publicity would be avoided, and demanded with emphasis that such agreement be made then and there, but that the petitioner declined so to do, whereupon Kinney stated in substance that they could prove in open court that the petitioner was keeping a fast house, a gambling house, and was dissipating his property and that his whole manner of living would be exposed in court; that the petitioner was then and for some time had been living in the society of and having improper intimate relations with a woman not then his wife, and thought

that this was what Kinney referred to when he spoke of exposing the petitioner's whole manner of living; that such threat created a fear in the petitioner's mind that such improper relations would be so exposed if he failed to accede to the demand; that petitioner was averse to a separation and division of the property and had always prior thereto lived in good friendship with his wife, and feared such exposure, and desired to protect from the disgrace thereof the said woman not his wife and his children and grandchildren, and that he had shortly theretofore suffered financial reverses and feared that the bringing of the threatened proceedings would entail large expense which he was ill able to bear; that in consequence of these fears and desires he was unable at that time to refuse absolutely to accede to the demand, and replied that he could not agree to anything at that time or until he could consult with his friend and agent, the defendant Carter, which he would do the following morning; that on the following morning he called on Carter and found Kahalewai's attorneys in conversation with him; that said conversation continued with very little attention paid to the petitioner, and that after the departure of the attorneys the petitioner told Carter the threats made to him and his fear and dread engendered thereby; that Carter then informed the petitioner that the attorneys had represented to him that the petitioner was living too fast and was improvident and dissipating his property and that he must make some division of his property so as to give his wife certain property or income for her support and that on failure to do so proceedings would be instituted on behalf of the wife to have petitioner placed under guardianship as a spendthrift, and that the attorneys, after talking with Carter, wanted petitioner to make a trust deed of his property so that the wife could be provided for; that the petitioner was not then dissipating his property but was living within his income and that his real property was unincumbered; that he believed that if he declined to make such deed the proceedings for placing him under guardianship would be instituted to his disgrace, and that he feared that as part of

such proceedings an endeavor would be made to expose the petitioner's improper relations with the said woman not his wife, and that he believed that such threats were made by the attorneys with the purpose of coercing the petitioner into acceding to their demand; that, as alleged on information and belief, Carter at his conversation with the attorneys agreed with them to assist them in procuring a trust deed in which provision would be made for the petitioner's wife and also other provisions relating to his property and its management not demanded by the attorneys but suggested by and acceptable to Carter; that petitioner is of half Hawaiian and half English blood and could speak and write only simple English in addition to the Hawaiian language and was without experience in business matters and was dependent upon the advice of others in such matters and at that time and long previously had been so dependent upon the advice of said Carter, with whom he had placed the entire management of his property and business affairs and in whom he had the fullest confidence; that Carter was a man of commanding presence and shrewd, strong and aggressive character and wide and valuable experience in business and that petitioner believed that he was learned in the law; that petitioner being sorely distressed by the demands and threats made and in dread of exposure as threatened, and relying upon Carter, asked Carter's advice concerning said demand and the course that the petitioner should follow with respect thereto and that Carter advised him that he thought the making of a trust deed would be the best thing that the petitioner could do; that the petitioner was greatly averse to doing so, but that, by reason of his great fear that he and his children and the woman would be exposed to disgrace in such divorce or separation or guardianship proceedings through the exposure of the petitioner's private life, he executed, against his free will and consent and under such constraint and durass, the trust deed in question and that such constraint continued until after the death of his wife Kahalewai.

The allegations made chiefly in support of the ground of mistake are substantially as follows: That the petitioner did not

at the time he executed the trust deed understand its provisions but relied upon Carter's advice and did not have or seek and was not advised to seek any legal advice as to the advisability or legal effect of the deed, but stated to Carter that he would make the trust deed if Carter thought best; that the petitioner thought that the deed was to be only for a special purpose, as for the payment by the trustee of certain debts or charges out of the income to be received by the trustee, and that the difference between an agent and a trustee did not seem great to him, and that he consented to make the trust deed knowing that Carter, who had been his agent, was still to be in charge of his property as trustee; that the deed was drawn by the attorneys and that Carter, after procuring certain changes and alterations to be made therein, stated to the petitioner that it was "all right" and then read the deed to the petitioner in the English language, but without commenting thereon; that the petitioner, although fairly understanding simple English, did not have a clearer understanding of the provisions of the deed after it was read to him than before; that he believed the only purpose of the deed was to secure his then wife a monthly allowance of $150 during her life by giving the property into the charge of Carter as trustee and that on the death of the wife the purpose of the deed would be fully accomplished; that the petitioner did not realize that the deed was irrevocable or would or could against the petitioner's will extend beyond his wife's lifetime but believed that after his wife's death he would be entitled to the property and the income thereof, should he then be living and desire the same; that he was not advised to have a clause of revocation inserted or that the deed would prevent or defeat any testametnary disposition should the petitioner survive his wife, and that he believed that the deed in all respects, except as to the provisions for the benefit of the wife, were in the nature of a testamentary disposition of his property to take effect upon his death should he die before his wife; that he did not realize the gravity or effect of the deed but suffering under the dread aforesaid relied on the advice of Carter to aid and assist him for his best interests;

that petitioner now believes that Carter's advice to him and acts in aiding the attorneys were unfair, disadvantageous and prejudicial to him and that he was ill advised and allowed by Carter to entertain a mistaken belief concerning the deed and that the acts and doings of said Carter unduly influenced him into a mistaken belief as to the effect of the deed whereunder he executed it; that such belief continued until February, 1903, when, his wife having died and he having married the said woman with whom he had had improper relations, the petitioner desired to have Carter continue to receive the income of the property and pay certain of it to his said present wife during her lifetime, should she survive him, but was informed by a friend of his, a notary public, that the deed was irrevocable and that the petitioner had only the right thereunder during his lifetime to receive the net profits; that the petitioner relief upon such advice until April, 1904, when, by reason of his increasing desire to make provision for his present wife in the event of petitioner's death during her lifetime, he again consulted his said friend who advised him to seek legal advice, which he did and which resulted in the bringing of the present bill; and that the property covered by the deed is the petitioner's entire property except personal effects and household chattels and is of the value of $151,000.

The allegations made chiefly as to duress and mistake are relied on also in support of the ground of undue influence.

The trust deed recites that the petitioner is desirous of making a "permanent and irrevocable settlement" upon his wife and their children, naming them; that the wife in consideration of such settlement had agreed to release and does release to the trustee all her dower right in the property coverd by the deed and for such consideration and other good considerations had released her dower right in the petitioner's homestead property in four deeds from petitioner to his said children whereby said premises are apportioned between the said children subject to certain reservations and conditions. The petitioner then in consideration of $1 conveys to the trustee certain lands in trust to

collect the rents, etc., and manage the property, or, upon the joint request of the petitioner and his wife or the successor of them during their lives or his or her life and after the decease of the survivor at the discretion of the trustee or trustees for the time being, to sell the property and invest the proceeds, and out of the net income, after payment of the expenses of the trust, to pay the wife $150 monthly as a first charge and the balance of the net income in quarterly instalments to the petitioner during his life and after his death the entire net income to the said children who shall survive and the children of any child who might die before the petitioner by right of representation, subject to the allowance after the death of the petitioner to the wife if she should survive him, and subject to further monthly charges of $25 and $30 respectively to Charles Mahoe and Flora Hiram for life out of the income of certain of the property, and upon the death of the last surviving child of the petitioner and his wife to convey the entire property to the lawful issue of the said children then surviving by right of representation. The trustee is also given power to mortgage the property for the purpose of raising money with which to improve and maintain the estate. It is provided also that the allowance to the wife may be reduced to $75 a month if at any time she shall accept and the petitioner shall give her support and maintenance. The petitioner also, in consideration of the wife's release of dower and of $1, releases all his rights in her property. The trustee is further authorized to pay the wife's then oustanding debts to the amount of $200, out of any property of the petitioner remaining in the hands of the trustee and not covered by the trust deed or if there is no such property then out of the income otherwise payable to the petitioner under the trust deed. Provision is made for the appointment of new trustees from time to time in case of the resignation, removal, death or unfitness of any trustee, such appointment to be made by the husband and wife during their ilves, by the survivor during his or her life, and thereafter by the court having cognizance of such matters.

It is not alleged that the petitioner was aged or weak minded. It is not contended, although some of the allegations and part of the argument seem directed to the point, that the deed is revocable on the ground that it is a voluntary deed, made without consideration, mainly for the petitioner's own purposes and that a clause of revocation was omitted through inadvertence or mistake, nor could such a contention be sustained. *Afong v. Afong,* 5 Haw. 191; *Kellett v. Sumner,* 15 Haw. 76. Nor in the view that we take of the main questions involved need we consider whether the doctrine of laches, much relied on by the defendants, is applicable. The same may be said of other arguments made by the defendants.

No one of the three grounds of duress, mistake and undue influence is relied upon solely by itself, but they are all relied upon also in conjunction with each other, but that of duress is perhaps the one that is most relied on. As stated in the petitioner's brief, the threat of exposure is the fact upon which the alleged duress hinges. It is not contended that the threat of mere civil proceedings, whether for divorce or separation or guardianship, would constitute duress. The argument, in opposition to the defendants' argument that a threat of civil proceedings does not amount to duress, is that the real distinction is not between civil and criminal proceedings, but whether the threats are in fact of such a nature as to destroy the power of choice; that the reason why it is usually held that threats of civil proceedings are not sufficient is because they as a rule naturally do not produce such fear or dread as to destroy the power of choice, and that the case is different when, added to the threat of civil proceedings, there is a threat of exposure which would result in disgrace, humiliation and shame to the threatened person and others nearly related to him; and that there is a distinction between a mere proposition to make a deed by way of settlement or compromise of a civil claim or contemplated civil proceedings and a declaration of intention to expose made for the very purpose of coercing or forcing the making of the deed. No doubt the doctrine of duress has been extended in recent times

so as to include as constituting duress facts which formerly would not have been considered sufficient. See 9 Cyc. 443 et seq., and cases there cited. And yet no case has been called to our attention which goes so far as to support the contention that a mere statement or threat in contemplated divorce, separation or guardianship proceedings on behalf of a wife against her husband, that the latter's confessed improper relations with another woman would be exposed, amounts to duress. However that may be, it is not clear in the present case that such threat, if the allegations of the bill may be construed as showing that such a threat was made, in fact deprived the petitioner of his power of choice or constrained him to execute the deed. It appears from the bill that the petitioner declined to comply with the attorney's demand, though it was emphatic and accompanied by the threat in question, and stated that he could not agree to anything until he had consulted with his friend and agent Carter and that he executed the deed after asking Carter's advice as to the course that he should follow and being advised by him that the making of the deed would be the best thing he could do, and that, while dreading exposure, he relied on Carter's advice.

The contention as to mistake also is untenable. It is practically that the petitioner did not fully realize the scope or effect of the deed. Some of the allegations of the bill show that the petitioner knew that the deed contained much more than a provision for his wife or provisions for himself, that it contained provisions that would not be effective until after his death. His contention is that he supposed such provisions were in the nature of a testamentary disposition of his property and did not realize that they were irrevocable. It appears also that the deed was read to him from beginning to end, and it is difficult to understand how, even if he had a knowledge of only simple English, he could have supposed the deed to be merely what he now alleges he supposed it to be. It recites that he was desirous of making a permanent and irrevocable settlement and is full of provisions applicable solely to a period subsequent to his

death.  However, let it be granted that he did not fully realize.
its effect.  Still, it was his duty to have ascertained its effect,
and he cannot complain now that he was mistaken as to that.
not having taken the necessary steps to inform himself.  It is
not shown that fraud or deception was practiced upon him or
that his mental condition was such that he was incapable of
understanding the nature of the deed.  It was his duty not only
to read it or if he could not read it to have it read to him, but,.
if he could not understand it because of his imperfect knowl-
edge of the English language or because it was in technical
phraseology, to have it translated or explained to him—or take·
the consequences.  See 9 Cyc. 388 et seq., and cases there cited.
There was certainly no excuse for his not asking his agent, in
whom he had such complete confidence and who read the deed
to him, to explain the parts he did not understand.  If he chose
to trust his agent rather than himself and the agent acted in
good faith, he must abide by the result.

The ground that perhaps has most to support it is that of
undue influence, and this not because of any allegations tending
to show that there was undue influence in fact but because of
the legal presumption of undue influence which arises from
the confidential relationship between principal and agent in a
transaction in which the agent has reaped some advantage at
the expense of his principal.  It is not shown that the agent
acted fraudulently.  There would be nothing to sustain this
ground if another than the agent had been made trustee under
the deed.  This ground can be sustained, if at all, under the alle-
gations of the bill, solely upon the fact that the agent was to be
trustee under the deed and would presumably be compensated
for his services in that capacity.  The presumption of undue
influence, if any, under the circumstances would be slight, and
there are matters shown by the bill which rebut it, if it would
exist from the mere fact that the agent was to be the trustee.
It does not appear that the suggestion that he should be trustee
came from him.  The petitioner naturally, in view of his con-
fidence in Carter and the fact that he had already intrusted to

him the management of his entire estate, would want him to be the trustee and, as he states, made the deed knowing that Carter, who had been his agent, was still to be in charge of his property as trustee. Doubtless that went far with the petitioner towards reconciling him to the idea of making the deed. The appointment of the trustee was incidental. The petitioner did not then and has not at any time since objected to Carter as trustee. His complaint now is that the deed was not to his best interests in other respects solely and not at all because of any remuneration that the trustee was to receive. Such remuneration was not specified in the deed. It could be only what the petitioner might assent to or what the law would allow, that is, what the services were reasonably worth. Carter was to continue as trustee with very much the same authority and obligations as he already had as agent, though his tenure would be more secure as trustee than it had been as agent, and yet he could be removed from the trusteeship for incapacity or unfitness or breach of his duties as trustee. On the whole we do not think the allegations of the bill sufficient to support the contention that it was procured by the exercise of undue influence by the agent upon the petitioner. Whether the deed could be set aside as to others interested under it, even if the agent had abused his confidence and obtained an unfair advantage, it is unnecessary to say.

The decree appealed from sustaining the demurrers and dismissing the bill is affirmed.

*Smith & Lewis* and *L. J. Warren* for the petitioner.

*Kinney, McClanhan & Cooper* for the trustee.

*A. S. Humphreys* and *Thompson & Clemons* for the other defendants.