377 P.3d 39

In the Matter of the ISHIDA–WAIAK-AMILO LEGACY TRUST dated June 27, 2006

and

In the Matter of the Ishida–Winant Legacy Trust dated June 27, 2006.

Nos. CAAP–13–0000449, CAAP–13–0000450.

Intermediate Court of Appeals of Hawai'i.

March 31, 2016.

Margery S. Bronster, Mia D. Obciana, (Bronster Hoshibata), Honolulu, on the briefs, for Appellants.

Michael A. Lilly, (Ning, Lilly & Jones), Honolulu, on the briefs, for Appellees.

FUJISE, Presiding Judge, LEONARD and REIFURTH, JJ.

Opinion of the Court by LEONARD, J.

In this consolidated appeal, Settlors–Appellants Richard H. Ishida, Jr., (**Richard**) and Rachel N. Ishida (**Rachel**) (collectively, the **Ishidas**) appeal from the Probate Court of the First Circuit's (**Probate Court's**): (1) May 3, 2013 Judgment on (1) Order Granting in Part and Denying in Part Petition for Rescission of Warranty Deed Dated March 28, 2007, Imposition of Constructive Trust, and an Order for Disgorgement Filed May 4, 2012, Filed on July 30, 2012, and (2) Order Denying Petition for Reconsideration of Order Granting in Part and Denying in Part Petition for Rescission of Warranty Deed Dated March 28, 2007, Imposition of Constructive Trust, and an Order for Disgorgement Filed August 10, 2012, Filed on March 27, 2013 (**Waiakamilo Judgment**), in T. No. 12–1–0080 (the **Waiakamilo Case**); and (2) May 3, 2013 Judgment on (1) Order Denying Petition for Reformation of Trust and/or Order Setting Aside the Ishida–Winant Legacy Trust Filed May 4, 2012, Filed on July 30, 2012, and (2) Order Denying Petition for Reconsideration of Order Denying Petition for Reformation of Trust and/or Order Setting Aside the Ishida–Winant Legacy Trust Filed on August 10, 2012, Filed on March 27, 2013 (**Winant Judgment**), in T. No. 12–1–0081 (the **Winant Case**).[1]

## I. BACKGROUND FACTS

### A. Creation of the Trusts

On June 27, 2006, the Ishidas, with the help of Michelle Hobus, Esq. (**Hobus**) of the Sterling & Tucker law firm, created the Ishida–Winant Legacy Trust (**Winant Trust**).

---

1. The Honorable Derrick H.M. Chan presided.

The trust was irrevocable. The trustee was their daughter, Juney M. Ishida (**Juney**). The trust's principal asset was an interest in the real property located at 945 Winant Street, Honolulu, Hawai'i (the **Winant Property**). Under the terms of the Winant Trust, upon the death of whichever of the Ishidas died last, the Winant Property was to be distributed to Juney or, if she was deceased, to the Ishidas' granddaughter Kauialohaokalani R. Wilson (**Kaui**). Also on June 27, 2006, the Ishidas executed a limited warranty deed transferring the Winant Property to Juney, as Trustee of the Winant Trust, reserving a life estate for themselves.

On the same day, the Ishidas also formed the Ishida–Waiakamilo Legacy trust (**Waiakamilo Trust**),[2] naming another daughter, Jeri S. Wilson (**Jeri**), as trustee. This trust was also irrevocable. The trust's principal asset was an interest in the real property located at 948 Waiakamilo Road, Honolulu, Hawai'i (the **Waiakamilo Property**). The trust property was to be distributed to Jeri or, if she was deceased, to Kaui, who is Jeri's daughter, as well as the Ishidas' granddaughter. Also on June 27, 2006, the Ishidas executed a limited warranty deed transferring the Waiakamilo Property to Jeri, as Trustee of the Waiakamilo Trust.

The Ishidas have a third daughter, Richardeen R. Kimura (**Richardeen**), who they specifically excluded from the Trusts. It appears undisputed that, in 2010, the Ishidas and Richardeen reconciled.

## B. Subsequent Transfers

In early 2007, as she was preparing to complete the Ishidas' 2006 tax returns, the Ishidas' accountant, Siu Lan Lundy (**Lundy**), asked to review the Trusts. After reviewing the Trusts, Lundy raised concerns with Rachel about the terms of the Waiakamilo Trust, specifically, that it did not specify that the Ishidas would continue to receive the income from the Waiakamilo Property, but the Ishidas remained responsible for the

property-related expenses, thus purportedly leaving the Ishidas with insufficient income to meet their needs. Rachel asked Lundy to call Hobus.

On March 28, 2007, in what appears to have been an attempt to address the concerns raised by Lundy,[3] the Waiakamilo Property underwent a series of transfers: first, from Jeri, as Trustee, to Jeri, individually; second, from Jeri, individually, to the Ishidas; and third, reserving a life estate for themselves, from the Ishidas to Jeri, individually.[4]

On November 3, 2010, subject to the Ishidas' life estate, Jeri transferred her interest in the Waiakamilo Property to a living trust created for Jeri and her husband.

## C. The Petitions

On May 4, 2012, the Ishidas filed: (1) a Petition for Rescission of Warranty Deed Dated March 28, 2007, Imposition of Constructive Trust, and an Order for Disgorgement, in the Waiakamilo Case (the **Waiakamilo Petition**); and (2) a Petition for Reformation of Trust and/or Order Setting Aside the Ishida–Winant Legacy Trust, in the Winant Case (the **Winant Petition**) (collectively, the **Petitions**).

The Waiakamilo Petition raised various allegations related to the Waiakamilo Trust, and the subsequent transfers of the Waiakamilo Property, and alleged that the March 28, 2007 transfer of the Waiakamilo Property from Jeri, as Trustee, to Jeri, individually, was void because the transfer violated the terms of the Waiakamilo Trust and Hawaii Revised Statutes (**HRS**) § 554A–5(b) (2006). In essence, the Ishidas alleged that they had not intended to create an irrevocable trust and that doing so left them unable to provide for themselves in their elder years. The Ishidas asked the Probate Court to rescind the March 28, 2007 deed transferring the Waiakamilo Property from Jeri, as Trustee, to Jeri, individually, to impose a constructive

---

**2.** The Winant Trust and the Waiakamilo Trust will collectively be referred to as the Trusts.

**3.** The Ishidas' signatures on these deeds were notarized by Hobus.

**4.** We express no opinion on the scope and/or merits of the concerns raised by Lundy in 2007 or the effectiveness of the transfers in addressing those concerns. We note that Lundy later, in a 2012 affidavit, also raised potential gift tax issues.

trust on the Waiakamilo Property, and to order that the Waiakamilo Property be returned to the Ishidas. The Waiakamilo Petition was supported by copies of both Trusts, the various aforementioned deeds transferring the Winant and Waiakamilo Properties in 2006, 2007, and 2010, a copy of a letter from the Custodian of Records for the Notary Public Program to the Ishidas' law firm,[5] and the Ishidas' signatures on the petition following a statement that:

THE UNDERSIGNED UNDERSTANDS THAT THIS DOCUMENT IS DEEMED TO INCLUDE AN OATH, AFFIRMATION, OR STATEMENT TO THE EFFECT THAT REPRESENTATIONS ARE TRUE AS FAR AS THE UNDERSIGNED KNOWS OR IS INFORMED, AND PENALTIES FOR PERJURY MAY FOLLOW DELIBERATE FALSIFICATION.

No other affidavit or declaration was submitted in support of the Waiakamilo Petition.

Similarly, the Winant Petition raises various allegations related to the Winant Trust, most notably that they did not intend to create an irrevocable trust. The Ishidas argued that, as the Winant Trust does not reflect their intent to create a revocable trust, they are entitled to an equitable remedy of reformation or that the trust should be set aside on the grounds that they were mistaken as to the terms and effect of the Trust. The Winant Petition was supported by the same documents as the Waiakamilo Petition and the same statement, as quoted above, over the Ishidas' signatures. No other affidavit or declaration was submitted in support of the Winant Petition.

Jeri filed an objection to the Waiakamilo Petition. Juney filed an objection to the Winant Petition. Each argued that numerous important allegations in the Petitions were incorrect and/or required further investigation and discovery, including but not lim-

ited to the deposition of Hobus, and that the Petitions should either be assigned to the civil trials calendar pursuant to Rule 20(a) of the Hawai'i Probate Rules (**HPR**) or denied in their entirety. Reply memoranda were filed by the Ishidas, objecting to any transfer to the civil calendar due to the Ishidas' advanced age, and requesting that the Petitions be granted.

A joint hearing was held on the Petitions, on June 14, 2012, and, after argument of counsel, the matters were taken under advisement. Minute orders were issued on July 2, 2012. Regarding the Winant Petition, the Probate Court stated that "the court finds no basis to reform or set aside the Ishida–Winant Legacy Trust." The Probate Court granted in part and denied in part the Waikamilo Petition, stating that "the court finds that Jeri Wilson violated the terms of the trust by transferring the Waiakamilo Property out of the Trust. The Court orders Jeri Wilson to transfer the Waiakamilo Property back to the Ishida–Waiakamilo Legacy Trust. Petitioners' request to impose a constructive trust and order the property to be returned to Petitioners is denied." Jeri's request to assign the matter to the civil trials calendar was also denied. Written orders were entered on July 30, 2012.

On August 10, 2012, petitions for reconsideration were filed in both matters. Without explanation as to why it could not have been presented earlier, both petitions included affidavits by Lundy, which described her actions in early 2007, as described hereinabove, and included Lundy's after-the-fact view that Rachel never would have signed the trust documents if Rachel had understood them, as well as Lundy's opinion as to what the outcome of the cases should be. Objections and replies were filed. A hearing was held on the petitions for reconsideration. Orders denying reconsideration were entered in both cases on March 27, 2013. In both cases, the

---

5. The letter stated, *inter alia,* that there were no entries found in Hobus's notarial record book for the signatures of the Ishidas dated March 28, 2007. It does not appear that the Ishidas were implying that they did not, in fact, sign the deeds. The Waiakamilo Petition specifically asserts that the Ishidas were "asked to sign documents that supposedly would solve the accountant's issues and allow [them] to continue to receive rental income from Waiakamilo." It appears from the Petition, rather, that the Ishidas were asserting that the deeds were not executed by the Ishidas on the specific date, March 28, 2007, that appears on the deeds themselves, which were notarized by Hobus, purportedly on that date.

Probate Court found "that it is unable to conclude that there has been a mistake, newly discovered evidence which by due diligence could not have been discovered in time before the [orders denying the initial petitions were] issued, or any other reason justifying relief."

The Waiakamilo and Winant Judgments were entered, pursuant to HPR Rule 34(c), on May 3, 2013. Notices of appeal were timely filed by the Ishidas. The appeals were consolidated by an order entered by the Intermediate Court of Appeals (**ICA**) on September 11, 2013.

On September 30, 2015, Rachel filed a suggestion of death upon the record, noting the death of Richard during the pendency of this action. On January 28, 2016, a motion was filed seeking to substitute Raydeen L. Graffam (**Raydeen**) for Richard after the Probate Court issues letters testamentary duly appointing Raydeen, a granddaughter of Richard and Rachel, as Richard's personal representative. As the Probate Court had not yet acted on Raydeen's petition, the requested relief was premature, and on February 3, 2016, the ICA denied the motion for substitution without prejudice.

## II. POINTS OF ERROR

The Ishidas raise two, related, points of error, contending that the Probate Court erred when: (1) it refused to exercise its power to impose an equitable remedy by denying the Ishidas' request to have the Waiakamilo Property returned to them and by refusing to reform or set aside the Winant Trust; and (2) it denied the Ishidas' request to impose a constructive trust or an order of disgorgement for the Waiakamilo Property and for the Winant Trust to be reformed or set aside based on the Ishidas' position that the Trusts were a mistake and not what they intended.

The Ishidas specifically aver that they do not appeal from the Probate Court's denial of the petitions for reconsideration.

## III. APPLICABLE STANDARD OF REVIEW

■ Although contending that the Circuit Court erred in refusing to exercise its equita-

ble powers, the Ishidas submit that the applicable standard of review is *de novo*, because the construction of a trust is a question of law which the appellate court reviews *de novo*. Applicable cases do, indeed, hold that the *construction* of a trust is reviewed *de novo*. *See, e.g., In re Lock Revocable Living Trust*, 109 Hawai'i 146, 151, 123 P.3d 1241, 1246 (2005). However, the disputed issues on appeal in this case do not involve the interpretation of the subject Trusts. As plainly stated on the first page of each Trust, the Trusts are irrevocable. The Ishidas have never argued otherwise. Rather, they have argued, seeking various equitable remedies, that they should be relieved from the clear terms of the Trusts.

■ The rescission or reformation of an instrument constitutes an equitable remedy. *AIG Haw. Ins. Co., Inc. v. Bateman*, 82 Hawai'i 453, 456, 923 P.2d 395, 398 (1996) ("[r]escission and cancellation are equitable remedies") (citation omitted); *Civic Realty, Inc. v. Dev., Inc.*, 3 Haw.App. 101, 102, 641 P.2d 1361, 1362 (1982) (acknowledging reformation as an equitable remedy). The imposition of a constructive trust is also an equitable remedy. *Beneficial Haw., Inc. v. Kida*, 96 Hawai'i 289, 315, 30 P.3d 895, 921 (2001).

The relief granted by a court in equity is discretionary and will not be overturned on review unless the circuit court abused its discretion. An abuse of discretion occurs when the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*Ueoka v. Szymanski*, 107 Hawai'i 386, 393, 114 P.3d 892, 899 (2005) (citations, internal quotation marks, brackets, and ellipsis omitted).

Thus, we review the Probate Court's challenged orders and judgments for an abuse of discretion.

## IV. DISCUSSION

### A. The Petitioners' Burden of Proof

■ It is a fundamental principle that the intent of the settlor, as expressed in the trust instrument, shall prevail, "unless inconsistent

with some positive rule of law." *In re Lock Revocable Trust,* 109 Hawai'i at 151–52, 123 P.3d at 1246–47 (citation omitted). Here, both Trusts unequivocally state that they are irrevocable. The threshold question is whether and based on what degree of proof, despite the clear language of the Trusts, the irrevocable Trusts should have been reformed or set aside, and/or the Ishidas should otherwise have been provided equitable relief on the grounds that they made a mistake and did not intend to create irrevocable trusts.

In the Waiakamilo Petition, the Ishidas sought, in addition to the relief granted, to impose a constructive trust on the Waiakamilo Property and an order that it be returned to the Ishidas. In the Winant Petition, the Ishidas sought a reformation or setting aside of the Winant Trust. It has been established that, under Hawai'i law, "[a] constructive trust will be imposed where the evidence is *clear and convincing* that one party will be unjustly enriched if allowed to retain the entire property." *Maria v. Freitas,* 73 Haw. 266, 274, 832 P.2d 259, 264 (1992) (emphasis added; citation omitted). With respect to the degree of proof required before a court will reform or rescind a trust based on mistake, the Restatement (Third) of Trusts provides:

> Where no consideration is involved in the creation of a trust, it can be rescinded or reformed upon the same grounds, such as fraud, duress, undue influence, or mistake, as those upon which a gratuitous transfer of property not in trust can be rescinded or reformed.... The law governing the rescission or reformation of a transfer inter vivos applies to declarations of trust as well as to inter vivos transfers in trust....
>
> ....
>
> Even if the will or other instrument creating a donative testamentary or inter vivos trust is unambiguous, the terms of the trust may be reformed by the court to conform the text to the intention of the settlor if the following are established by **clear and convincing evidence:** (1) that a mistake of fact or law, whether in-expression or inducement, affected the specific terms of the document; and (2) what the settlor's intention was.

Restatement (Third) of Trusts § 62 cmt. a & b (2003) (emphasis added); *see also* Mary F. Radford, George Gleason Bogert, & George Taylor Bogert, *The Law of Trusts and Trustees* § 991 (3d ed. 2006). The rationale for the clear and convincing evidence standard in proving mistakes in donative documents is further explained in the Restatement (Third) of Property § 12.1 cmt. b (2003):

> When a donative document is unambiguous, **evidence suggesting that the terms of the document vary from intention is inherently suspect but possibly correct.** The law deals with situations of inherently suspicious but possibly correct evidence in either of two ways. One is to exclude the evidence altogether, in effect denying a remedy in cases in which the evidence is genuine and persuasive. The other is to consider the evidence, but guard against giving effect to fraudulent or mistaken evidence by imposing an above-normal standard of proof. In choosing between exclusion and high-safeguard allowance of extrinsic evidence, this Restatement adopts the latter. Only high-safeguard allowance of extrinsic evidence achieves the primary objective of giving effect to the donor's intention.

(Emphasis added.)

This heightened level of proof is consistent with Hawai'i precedent. In *Love v. Love,* 17 Haw. 206 (1905), the Hawai'i Supreme Court described the case, which has obvious similarities to the one before us, as follows:

> This was a bill in equity to establish the plaintiff's claim that he had a right to revoke a conveyance in trust made by him without reserving a power of revocation.
>
> He bases his claim upon the facts that the conveyance was made voluntarily, without consideration from either of the beneficiaries and without his intention that the trust should be irrevocable but with the understanding and belief that it was revocable and could be rescinded at any time by him, and that he was not advised by his attorney who prepared the instru-

ment that he ought to make provision for revoking the trust.

*Id.* at 207.

Recognizing the trial court's discretion in the matter, the supreme court opined: "[W]e do not think that we ought to remand the case with direction to the judge to allow the amendment [of the trust], the refusal of which by him was an action 'taken in the exercise of a discretion with which we are not justified in interfering.'" *Id.* at 211 (citations omitted). After examination of various arguments and authorities, the court recognized in *Love* that "an act may be so improvident and unreasonable as to justify the inference that it was done under some delusion or by one whose mind was so enfeebled as to render him incompetent to transact business, when proof would be required to show that the act was done intelligently, with knowledge of its consequences." *Id.* at 215. The court further observed that the fact that the plaintiff intended for the conveyance to be revocable and that he was not properly advised by his attorney did not satisfy the foregoing condition, and held that:

> A grantor's ignorance of the contents of his voluntary deed of gift or of its legal effect or his belief that it contains an important provision which it does not contain or the failure of his attorney to advise him of its contents and their legal effect are facts which, under certain circumstances, justify an inference of his mental incapacity, but there is no rule that such facts alone are sufficient to enable the grantor to avoid his deed.

*Id.*

Although not stated as such, the supreme court clearly recognized a heightened level of proof applicable to the disavowment of a duly-executed legal instrument. In noting the application of the clear and convincing evidence standard to various other situations, the supreme court has stated:

> Clear and convincing proof is a standard frequently imposed in civil cases where the wisdom of experience has demonstrated the need for greater certainty, and where this high standard is required to sustain claims which have serious social consequences or harsh or far reaching effects on

individuals to prove willful, wrongful and unlawful acts to justify an exceptional judicial remedy.

*Iddings v. Mee–Lee*, 82 Hawai'i 1, 14, 919 P.2d 263, 276 (1996). As the Restatement explains, mistakes in unambiguous donative documents should be proved by clear and convincing evidence because "evidence suggesting that the terms of the document vary from intention is inherently suspect but possibly correct." Restatement (Third) of Property § 12.1 cmt. b (2003).

■ Thus, we conclude that the clear and convincing evidence standard applies when a trustor seeks reformation, rescission, or other equitable relief from the clear and unambiguous terms of a trust instrument on the grounds of mistake of fact or law.

### B. The Probate Court's Denial of Equitable Relief

#### 1. The Waiakamilo Petition

On appeal, the Ishidas first argue that the Waiakamilo Trust should have been reformed or set aside on the grounds of mistake because they did not intend, *inter alia*, to put the Waiakamilo Property in a trust that could not be revoked. This argument must fail, however, because the Waiakamilo Petition did not seek to reform or set aside the Waiakamilo Trust. As discussed above, the Waiakamilo Petition asked the Probate Court to rescind the March 28, 2007 deed transferring the Waiakamilo Property from Jeri, as Trustee, to Trustee, individually—the Probate Court granted this relief and ordered that the Waiakamilo Property be transferred back to the Waiakamilo Trust. The Waiakamilo Petition also asked the Probate Court to impose a constructive trust on the Waiakamilo Property and to order that it be returned to the Ishidas—the Probate Court denied this relief. As the Ishidas did not seek to reform or set aside the Waiakamilo Trust in their Probate Court petition, their argument on appeal, that the Waiakamilo Trust should be reformed or set aside, is without merit. *See, e.g., Price v. AIG Haw. Ins. Co.*, 107 Hawai'i 106, 111, 111 P.3d 1, 6 (2005).

Without reference to the applicable standard of review on appeal, or the clear and convincing evidence necessary for the imposition of a constructive trust, the Ishidas argue that a constructive trust should be placed on the Waiakamilo Property because Jeri, who paid nothing for the Waiakamilo Property, is being unjustly enriched by wrongfully retaining title of the property, as trustee of the Waiakamilo Trust.

Hawai'i law concerning the imposition of a constructive trust is well-established and has been clearly explicated as follows:

A constructive trust arises where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it. Restatement, Restitution § 160 (1937). A constructive trust will be imposed if a transfer of land was obtained in an abuse of a confidential relationship. *Fairfield v. Medeiros*, 58 [50] Haw. 73, 431 P.2d 296 (1967); Restatement, Restitution § 182 (1937), 3 Bogert, *Trusts*, § 482 (1960). Where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. 1 Scott, *Trusts* § 44.2 (3d ed. 1967). It is necessary that both a confidential relationship and reliance upon a promise to reconvey induced by that relationship be shown. As Justice Cardozo has written:

It (is) the case of a confidence induced, not by the bare promise of another, but by the promise and the confidential relation conjoined. (Citation omitted)

It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion. *Sinclair v. Purdy*, 235 N.Y. 245, 253, 139 N.E. 255, 258 (1923).

The basic prerequisites for the application for an abuse of confidence constructive trust are: (1) a confidential relationship; (2) conveyance to the grantee based upon, and arising out of a confidential relationship; (3) a promise to hold for, or reconvey to, the grantor or a third person; and (4) a subsequent refusal to reconvey resulting in the grantee's unjust enrichment. *The Confidential Relationship Theory of Constructive Trusts–An Exception to the Statute of Frauds*, 29 Fordham L.R. 561, 563 (1961); *Sinclair v. Purdy, supra*; Restatement, Restitution § 160.

It is well established in this jurisdiction that a constructive trust will be imposed only when the evidence is clear and convincing. *Fairfield v. Medeiros, supra; De Mello v. De Mello*, 34 Haw. 922 (1939); *Kuwahara v. Kuwahara*, 23 Haw. 273 (1916).

*Kam Oi Lee v. Fong Wong*, 57 Haw. 137, 139–40, 552 P.2d 635, 638 (1976) (internal quotation marks and ellipses omitted).

██ Other Hawai'i cases have explained that "a constructive trust may be defined as a device utilized by equity to compel one who unfairly holds a property interest to convey that interest to another to whom it justly belongs," and "[t]he policy basis of a constructive trust is to prevent the holder of the property from being unjustly enriched due to fraud, duress or other unconscionable conduct." *DeMello v. Home Escrow, Inc.*, 4 Haw.App. 41, 48, 659 P.2d 759, 763–64 (1983) (citations and internal quotation marks omitted). Thus, "[t]he beneficial owner, in equity, has the right to have the title to the property transferred to himself if it is in the hands of the wrongdoer." *Peine v. Murphy*, 46 Haw. 233, 241, 377 P.2d 708, 713 (1962) (citations omitted).

In this case, the Waiakamilo Petition contains only the faintest insinuation of any wrongdoing by Jeri related to the creation of the Waiakamilo Trust, *i.e.*, "the Ishidas were encouraged by Jeri to update their estate plan" and "[the Ishidas] did not know that Sterling and Tucker was also [contemporaneously] working for and communicating with Jeri." Both assertions were expressly denied by Jeri in response to the Waiakamilo Petition. The record in this case is devoid of evidence sufficient to demonstrate that Jeri is being unjustly enriched due to an abuse of confidence, fraud, duress, or other unconscionable conduct.

The Ishidas' remaining argument for the imposition of a constructive trust on the Waiakamilo Property is that they were mistaken as to the fact that the Waiakamilo Trust was irrevocable and as to the legal effect of the Trust. First, the Hawai'i Supreme Court has rejected arguments similar to the one at bar. In *Evans v. Bishop Trust Co.*, 21 Haw. 74, 76–77 (1912), the complainant sought to terminate a trust which she had created for the benefit of her and her children but which did not reserve for her a specific power to revoke though "when she executed the [deed in trust] in question, [she] believed that she might at any time revoke the trust[.]" Acknowledging that the trust in question could not be revoked by the complainant in the absence of mistake or fraud, the supreme court stated that:

> [t]he omission of a clause of revocation is sometimes regarded as a circumstance, which, taken together with other circumstances, tends to show mistake or undue influence. But the absence of such a clause from the deed [of trust] without circumstances other than the mere mistaken belief on the part of the settlor that she possessed the power of revocation does not give rise to any inference which could be taken as a ground for the revocation of the trust.

*Id.* at 83.

In *Cummins v. Carter*, 17 Haw. 71, 72 (1905), the petitioner requested the cancellation of a trust deed on the grounds of duress, undue influence, and mistake. With regards to mistake, the petitioner alleged, *inter alia*, that he did not understand the provisions of the trust deed at the time he executed it, that he did not realize that it was irrevocable, that it was read to him in English, but that he did not have a clear understanding of its provisions and only understood simple English. *Id.* at 74–75. As summarized in the court's syllabus:

> A trust deed made for the benefit of the maker and his family cannot be set aside on the ground that the maker did not fully realize its scope or effect on account of his imperfect knowledge of English or legal phraseology. He was not mentally weak, no fraud was practiced on him, the deed

was read to him, and he trusted his agent's advice that it was all right. It was his duty to have had it translated or explained to him or take the consequences.

*Id.* at 71–72; *see also id.* at 80.

In *Love*, 17 Haw. at 207, the plaintiff claimed he had a right to revoke a trust where it was made voluntarily, without consideration, without the intention that it would be irrevocable, but with the understanding and belief that it was revocable. However, as stated in Section IV.A. above, the court held that:

> A grantor's ignorance of the contents of his voluntary deed of gift or of its legal effect or his belief that it contains an important provision which it does not contain or the failure of his attorney to advise him of its contents and their legal effect are facts which, under certain circumstances, justify an inference of his mental incapacity, but there is no rule that such facts alone are sufficient to enable the grantor to avoid his deed.

*Id.* at 215; *see also Joaquin v. Joaquin*, 5 Haw.App. 435, 442, 698 P.2d 298, 303 (1985) ("A mistake as to the nature and effect of a document caused by a failure to read it is not an excusable mistake.") (citation omitted).

Moreover, the Probate Court did not err in concluding that the evidence in support of the Ishidas' argument of mistake falls short of the evidence necessary to establish that the Ishidas were mistaken as to the unambiguous terms of the Trust. The only evidence offered in support of the assertion that the Ishidas were mistaken as to the nature and/or legal effect of the Waiakamilo Trust is the Petition itself, which was sighed by the Ishidas.

On appeal, the Ishidas refer to "compelling evidence" and "the clear testimony of the Settlors regarding their own intent and the mistake that was made," in apparent reference to the Ishidas' signatures on the Waiakamilo Petition following a statement that:

> THE UNDERSIGNED UNDERSTANDS THAT THIS DOCUMENT IS DEEMED TO INCLUDE AN OATH, AFFIRMATION, OR STATEMENT TO THE EFFECT THAT REPRESENTA-

TIONS ARE TRUE AS FAR AS THE UNDERSIGNED KNOWS OR IS IN-FORMED, AND PENALTIES FOR PERJURY MAY FOLLOW DELIBER-ATED FALSIFICATION.

This statement appears to stem from HPR Rule 5(a) (2007) which, at that time, provided: [6]

**Rule 5. SIGNING OF PLEADINGS.**

(a) **Verification of Pleadings; Affidavits.** All pleadings (other than those signed by a party's attorney) shall include a statement at the end and before the signature of the person presenting the pleading to the effect that the person understands that the document is deemed to include an oath, affirmation, or statement to the effect that its representations are true as far as the person executing or filing it knows or is informed, and that penalties for perjury may follow deliberate falsification. Such a statement shall be accepted in lieu of an affidavit as to the facts stated in the pleading. The signature of an applicant in informal proceedings shall be notarized.

If a pleading requires consideration of facts not appearing of record or verified as provided above, it shall be supported by affidavit, signed by the person having knowledge of the facts and competent to testify. An attorney may submit a declaration in lieu of an affidavit to support facts outside of the record.

▬▬▬ We consider the Ishidas' verification in the context of the clear and convincing evidence standard applicable to their request for equitable relief from the unambiguous terms of the Waiakamilo Trust. The Ishidas jointly attested that "representations [contained in the Petition] are true as far as the undersigned knows or is informed" and acknowledged that a penalty of perjury might result from "deliberate falsification." As set forth in HPR Rule 5(a), this attestation is accepted in lieu of a sworn affidavit to the same effect, *i.e.,* that the information contained therein is true as far as *the affiant knows or is informed,* and thus satisfied the

requirements of the rule. It is not, however, identical in every way to testimony that has been subject to cross-examination, or a sworn affidavit, or a declaration made under penalty of law, that specified factual statements *are true and correct.* It is within the province of the trial court to determine the credibility of a witness and the weight to be given to a witness's testimony. *See, e.g., Tamashiro v. Control Specialist, Inc.,* 97 Hawai'i 86, 92, 34 P.3d 16, 22 (2001). Written testimony that could be based upon limited memory or knowledge, or information and belief, rather than personal knowledge, particularly testimony that purports to reflect the joint recollection and intent of two people, without distinction, might reasonably be viewed as less reliable or less convincing than other forms of evidence.

We have carefully examined the affirmative statements made in the Waiakamilo Petition concerning the Ishidas' purported mistake, which includes the following:

On May 17, 2006, the Ishidas met with [Hobus] to discuss changing their estate plan. . . .

. . . The Ishidas told [Hobus] that they wanted to control the properties during their lives, but when they died they wanted to give the Winant Property to Juney, and the Waiakamilo Property to Jeri, with both properties eventually passing to Kaui. . . .

Based on the discussion with [Hobus], the Ishidas understood that Sterling and Tucker would create simple wills and <u>revocable</u> trusts that would provide for the distribution of the properties upon the death of both Rachel and Richard to Juney and Jeri, with the properties ultimately passing to Kaui upon Juney and Jeri's death.

On June 27, 2006, Michelle Hobus provided the Ishida with [ ] 17 documents for execution, including two complex trusts over 50 pages each . . .

During the time between the initial meeting with Hobus and the date of execution, Sterling and Tucker did not seek any

---

6. HPR Rule 5(a) was amended in 2013 to, *inter alia,* require an oath or affirmation that a probate court petition and application include an oath, affirmation or statement to the effect that

the document "is not being presented for an improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation."

clarification from the Ishidas, did not ask any questions, did not send the Ishidas any drafts, and did not provide the Ishidas with any information. Michelle Hobus simply showed up on June 27, 2006 and presented the Ishidas with these complex and unfamiliar documents in final form, which the Ishidas signed the same day. The Ishidas had never seen drafts of the documents and believed that Hobus had made the changes they had discussed.

The Ishidas did not understand the contents or ramifications of executing such documents. At the time, Richard was in a weakened mental and physical state and was relying upon Rachel. Richard had always handled the couple's legal and financial affairs and Rachel was unsophisticated and ill-equipped to understand any of the legal instruments. Rachel was embarrassed to explain that she did not understand the documents. Instead, she relied on Sterling and Tucker to guide her. Michelle delivered and notarized the documents. The Ishidas executed what they understood to be simple wills and revocable trusts.

Notably, the Waiakamilo Petition does not specify whether one or both of the Ishidas read the first page of the Waiakamilo Trust, Section 3 of which plainly states (emphasis in the original):

**Irrevocable Trust**

Our trust is irrevocable. Except as expressly herein provided to the contrary, no Trustor or any other person shall have any right or power to alter, amend, or in any manner whatsoever modify any of the provisions hereof.

The Ishidas' representations that they understood that Hobus would create revocable trusts, and that they understood that they executed revocable trusts, tend to undermine the representation that they did not understand the above. Nor do they go so far as to say that Richard was incompetent or lacked the capacity to understand the documents at the time they were executed. The Ishidas make no attempt whatsoever to explain Richard's purportedly "weakened mental and physical state" at the time the documents were executed or Rachel's purported unsophistication. In her objection to the Waiakamilo Petition, Jeri averred that:

[C]ontrary to the Petition, Rachel handled the Ishidas' finances and legal matters and by no means is/was "unsophisticated and ill-equipped to understand" the Trusts and related documents. Evidencing Rachel's sophistication is the fact that she managed and operated two businesses out of the Waiakamilo storefronts: 1) a floral shop and 2) a snackshop/restaurant. Furthermore, Richard was in good health at the time the Trusts were executed and in no way mentally weak[.]

In their reply memoranda and at the hearing on the Petitions, the Ishidas actively opposed allowing any discovery or further development of the facts, instead arguing that "[t]he Court has all the information it needs." [7]

In sum, we have a trust document that plainly and prominently states that it is irrevocable, which we assume that the Ishidas read, as they have not posited otherwise. There is no evidence of an abuse of confidence, fraud, duress, or other wrongdoing. There is scant evidence of incapacity or an inability to understand the Trust documents, and that evidence is disputed. The Ishidas now, years later, jointly aver that the Trust documents do not reflect what they intended. Although unsupported by any other evidence, such as testimony, notes, correspondence and/or other records from Hobus, we recognize that the Ishidas' statement that they

---

7. We note that the parties' submissions to Probate Court also contain numerous emotionally-charged statements about the respective parties' motivations, including the impact of the Ishidas' reconciliation with Richardeen, the Ishidas' finances and the financial consequences of the Trusts, and other disputed assertions concerning money (for example, the Ishidas say that Jeri stopped paying on a line of credit taken out by the Ishidas and Jeri says that Rachel told her to stop and refused future payments). However, the Ishidas consistently argue that their mistake was that they did not understand the Trust documents at the time they were executed, rather than that they regret and now seek relief from the effect of the documents. Although all of the parties' factual assertions have been reviewed and considered by this court, only those tending to support or negate the Ishidas' claim of mistake are specifically recounted here.

were mistaken as to the nature or effect of the Waiakamilo Trust is possibly correct. However, it is inherently suspicious, as it could as easily reflect regret over a course of action that they later viewed as improvident or regret over their determination of beneficiaries. Nor can we conclude, based on the parties' submissions concerning their family history and their description of their financial circumstances, that the creation of irrevocable trusts was so inherently improvident and unreasonable that the Probate Court was required to infer that "it was done under some delusion or by one whose mind was so enfeebled as to render him incompetent to transact business." *Love*, 17 Haw. at 215.

Thus, we conclude that the Probate Court did not abuse its discretion when it declined to impose a constructive trust on the Waiakamilo Property or otherwise return it to the Ishidas.

### 2. The Winant Petition

On appeal, the Ishidas first argue that the Winant Trust should have been reformed or set aside on the grounds of mistake because they did not intend, *inter alia*, to put the Winant Property in a trust that could not be revoked.

■ Under Hawai'i law, it has been held that:

> In equity a conveyance made or a contract entered into by a person of legal and mental capacity may be declared void if induced by fraud, duress, undue influence, misrepresentation, or, in contracts, of mutual mistake of fact or of mistakes of fact and law.

*Love*, 17 Haw. at 215. Although *Love* did not expressly state that mistakes of fact or law could provide grounds for reformation or rescission of a trust, that was in fact the issue at bar in *Love*. *See id.* Thus, we hold that, upon sufficient evidence and in the trial court's discretion, a trust may be reformed or rescinded based on such mistakes. *See also In re Lock Revocable Trust*, 109 Hawai'i at 157, 123 P.3d at 1252 (Nakamura, J., con-

curring) (reformation of trust provisions could be allowed so that they conform with the settlor's intent on the ground that the settlor, made a unilateral mistake) (citing 90 C.J.S. Trusts § 95; cmt. e, Restatement (Second) of Trusts § 333 (1959)).

■ Nevertheless, as the same evidence concerning the Ishidas' purported mistake was presented in conjunction with both the Waiakamilo Petition and the Winant Petition,[8] and the first page of the Winant Trust contains the same plain and unambiguous language as the Waiakamilo Trust, stating that it is an irrevocable trust, our analysis of the Probate Court's rejection of the Ishidas' request for equitable relief based on mistake is the same. Thus, we conclude that the Probate Court did not abuse its discretion when it declined to reform or rescind the Winant Trust.

■ On appeal, the Ishidas further argue that a constructive trust should be placed on the Winant Property. However, the Winant Petition did not seek to impose a constructive trust on the Winant Property. Thus, we conclude that this argument is without merit.

## V. CONCLUSION

For these reasons, we affirm the Waiakamilo Judgment and the Winant Judgment, both of which were entered by the Probate Court on May 3, 2013.

---

8. With respect to the Winant Petition, Juney verified the statements in her objection to the Winant Petition, which were essentially the same as the statements made by Jeri in her objection to the Waiakamilo Petition.